D. COLTON BOYLES, ISB# 10282
BOYLES LAW, PLLC
PO Box 1242
319 Church Street
Sandpoint, Idaho 83864
Phone: (575) 808-9137
Colton@CBoylesLaw.com

Nathaniel K. MacPherson*
Bradley Scott MacPherson*
The MacPherson Group, LLC
24654 North Lake Pleasant Parkway
Suite 103-551
Peoria, AZ 85383-1359
Phone: (623) 209 - 2003
nathan@beatirs.com
scott@beatirs.com

Attorneys for Plaintiff

*Pro hac vice application pending

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCOTT HERNDON, REV. JOSH JONES, and REV. MICHAEL GULOTTA,<br><br>Plaintiffs,<br><br>v.<br><br>Governor BRADLEY JAY LITTLE, in his official capacity, DAVE JEPPESEN, in his official capacity as Director of the Idaho Department of Health and Welfare,<br><br>Defendants. | CASE NO.:<br><br>**VERIFIED COMPLAINT FOR DECLARATORY RELIEF, TEMPORARY RESRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF** |

Plaintiffs Scott Herndon, Rev. Josh Jones, and Rev. Michael Gulotta, in their

individual capacity, and on behalf of all similarly situated citizens, bring this action to

Boyles Law

declare the Order to Self-Isolate of the Director of the Idaho Department of Health and Welfare dated March 25, 2020, and amended on April 15, 2020 and April 30, 2020 (Stay-Home Order) unconstitutional and to stop Governor Little and Director Jeppesen from violating their rights under the First, Fifth, and Fourteenth Amendments of the United States Constitution, the Religious Land Use and Institutionalized Persons Act, Article 1 and 21 of the Idaho Constitution, and the Idaho Religious Freedom Restoration Act. Plaintiffs allege as follows:

## I.   OVERVIEW

1.   In Idaho, it is lawful to have bread and wine delivered to your house, whether through a common carrier such as FedEx, UPS, or the USPS, or through a delivery service such as DoorDash, Grubhub, or Uber Eats.

2.   However, if the person delivering the bread and wine happens to be a pastor, if instead of "here's your food," he says, "The Lord Jesus Christ, on the night He was betrayed, took bread…," and if you and the pastor believe that he is, by doing so, administering to you the Sacrament of Holy Communion, then you have both violated the Stay-Home Order. That is a crime.

3.   The only difference between the two scenarios is (1) the Word of God being spoken and (2) the religious beliefs of the parties involved.

4.   Furthermore, you may legally congregate with family and friends – with proper "social distancing" – at the local Albertson's, Fred Meyer, or Super 1, but not at your local church. Obtaining a loaf of sandwich bread is "essential" and legal but attaining the "Bread of Life" is a crime, according to the Stay-Home Order.

5.   The only difference between those two scenarios is the religious purpose involved, as both can be conducted in accordance with CDC health guidelines.

6.   Plaintiffs seek an order restraining enforcement against them of the Stay-Home Order which purports to prohibit them, on pain of criminal sanctions including arrest and

Boyles Law

imprisonment from gathering together in any location regardless of whether they meet or exceed the "social distancing" and hygiene guidelines.

7.   The Stay-Home Order discriminatorily allows "essential" businesses and activities to continue unfettered with large crowds of people only because those gatherings are not "faith based" or for "spiritual" purposes.

8.   As demonstrated herein, the Stay-Home Order has been interpreted by local law enforcement such that most churches have closed and most religious gatherings have ceased, and those that continue do so under actual threat of intervention by local and state law enforcement.

9.   The Governor of Kansas imposed less draconian restrictions on religious gatherings than those in Idaho, allowing up to 10 individuals to continue to gather, yet on April 18, 2020, the United States District Court for the District of Kansas issued a TRO enjoining its enforcement and ordering the government of Kansas to treat "religious" gatherings the same as secular ones. See First Baptist Church v. Kelly, No. 20-1102-JWB, 2020 WL 1910021, *6–7 (D. Kan. Apr. 18, 2020). Notable in the First Baptist TRO is the holding that the Kansas order violated the Free Exercise Clause because, "religious activities were specifically targeted for more onerous restrictions than comparable secular activities." Id. at *7.

10. Like the Idaho Stay-Home Order, which specifically orders the immediate cessation of all "spiritual" and "faith-based" gatherings of any size, so, too, the Kansas order singled out religious gatherings while permitting other non-religious activities. The Court held that this disparate treatment, "show[s] that these executive orders expressly target religious gatherings on a broad scale and are, therefore, not facially neutral," Id. at *7.

11. As Free Exercise Clause jurisprudence demonstrates, "it goes without saying that the government could not lawfully expressly prohibit individuals from meeting together for religious services." Id. at *6.

Boyles Law

## II.   PARTIES

12. Plaintiff Scott Herndon is a resident of Sagle, Bonner County, Idaho, who wishes to attend the local church because the same has ceased operation in obedience to the governor's Stay-Home Order.

13. Plaintiff Josh Jones is a resident of Laclede, Idaho, and pastor of Laclede Community Church in Laclede, Idaho, who risks criminal sanctions if he continues to hold church services and otherwise carry out his vocation as a pastor. He has even been advised by the local Sheriff that he would do so at the continual risk of arrest by the Idaho State Police.

14. Plaintiff Michael Gulotta is a resident of Grangeville, Idaho, and pastor of Grangeville Christian Reformed Church in Grangeville, Idaho, who risks criminal sanctions if he continues to hold church services and otherwise carry out his vocation as a pastor.

15. Defendant Bradley Jay Little ordered the issuance of the Stay-Home Order at issue in this case and is sued in his official capacity as the Governor of Idaho.

16. Defendant Dave Jeppesen, at the direction of Governor Little, issued the Stay-Home Order at issue in this case and is sued in his official capacity as the Director of the Idaho Department of Health and Welfare.

## III.   JURISDICTION AND VENUE

17. This action arises under the First and Fourteenth Amendments to the United States Constitution and the Religious Land Use and Institutionalized Persons Act, and is brought under 42 U.S.C. § 1983 and 42 U.S.C. §§ 2000cc-2000cc-5.

18. This action also arises under Article I, Sections 1, 4, 9, and 10 of the Idaho Constitution, Article 21, Section 19 of the Idaho Constitution, and the Idaho Religious Freedom Restoration Act, Idaho Code § 73-401 *et seq*.

19. This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343.

Boyles Law

20. This Court has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

21. This court has the authority to grant the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202, the requested injunctive relief under 28 U.S.C. § 1343, and reasonable attorney's fees and costs under 42 U.S.C. § 1988 and I.C. § 73-402(4).

22. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part, if not all, of the events or omissions giving rise to the claims occurred in this district and Defendants reside in this district.

### IV.   FACTS

#### A.   The Stay-Home Order in General

23. On March 25, 2020, Idaho Governor and Defendant Bradley Jay Little ordered the Director of the Idaho Department of Health and Welfare to issue an Order to Self-Isolate. The same day Defendant Dave Jeppesen, Director of the Idaho Department of Health and Welfare, issued an Order to Self-Isolate.

24. That Stay-Home Order was amended on April 15, 2020. True and correct copies of the Stay-Home Order, the Governor's Proclamations as amended, and the Stay Healthy Order along with the CDC guidelines are attached as Exhibit A and incorporated herein ("Stay-Home Order").

25. The Stay-Home Order directs "all businesses" to cease "nonessential operations" and "prohibit[s] all non-essential gatherings of any number of individuals."

26. Section 7 of the Stay-Home Order prohibits intrastate travel "except for those purposes defined in Section 8."

27. Section 8 of the Stay-Home Order prohibits individuals from traveling away from their residence except to perform "Essential Activities" as defined therein.

28. The first page of the Stay-Home Order bears the following sentences: "Please read this Order carefully. Violation of or failure to comply with this Order could constitute a misdemeanor punishable by fine, imprisonment, or both. Idaho Code § 56-1003(7)(C)."

Boyles Law

29. Idaho Code § 56-1003(7)(C) reads: "Any person who violates an order of isolation or quarantine shall be guilty of a misdemeanor."

30. Idaho Code Ann. § 18-111B defines "misdemeanor" as follows: "Wherever the words misdemeanor, petty misdemeanor or violation are used in the entire Idaho Code as well as the 1972 Session Law amendments thereto, these terms or any of them shall be construed to mean misdemeanor and shall be punished, unless otherwise provided for in a specific act, as provided under the General Misdemeanor Statute contained in section 18-113, Idaho Code."

31. Idaho Code § 18-113(1) sets forth the punishment for a misdemeanor in the following words: "Except in cases where a different punishment is prescribed in this code, every offense declared to be a misdemeanor, is punishable by imprisonment in a county jail not exceeding six (6) months, or by a fine not exceeding one thousand dollars ($1,000), or by both."

32. The Idaho Governor and the Idaho Attorney General have both stated verbally and in writing that the Stay-Home Order is enforceable.

**B.   The Stay-Home Order with Respect to Religion**

33. Church attendance is not included in the definition of "Essential Activities" in the Stay-Home Order.

34. Pastoral work is not included in the definition of "Essential Activities" in the Stay-Home Order.

35. Essential and non-essential business, operations, and activities are further defined in a supplementary document titled "Essential Services." See Exhibit B, attached.

36. Churches are not defined as "essential services" in that supplementary document.

37. Pastors are not defined as essential workers in that supplementary document, either.

Boyles Law

38. Further guidance for the Stay-Home Order is given in another supplementary document titled "Additional Guidance on Statewide Stay-Home Order." See Exhibit C, attached.

39. That "Additional Guidance" clarifies that churches may legally livestream their religious services "so long as only the minimum personnel necessary to stream the service (no more than 5) and the individuals maintain the Social Distancing Requirements in the Order."

40. In other words, per the Stay-Home Order as supplemented by the aforementioned documents, in the State of Idaho, no pastor may legally perform his usual Sunday church services in his usual church building with the usual parishioners in attendance; he may only conduct a live or recorded video presentation, and only as long as no more than four other people are present with him in the building. Everyone else in his congregation who normally would attend, are prohibited from attending.

41. Further, because only "essential" travel is permitted, a pastor may not legally travel to the homes of his congregants for the purpose of conducting in-home church services or administering the sacraments of his religion with them at their homes.

42. Said another way, the vocation of priests has been stopped by edict of the Defendants, in contravention of the U.S. Supreme Court's decision in *Holy Trinity Church*, 143 U.S. 457 (1892) (held: it was inconceivable that Congress had authority to pass a law restricting the employment of a priest at a local church).

43. Despite the fact that the Stay-Home Order bans all "faith-based" and "spiritual" gatherings, it specifically includes under Section 8 as "essential businesses" such activities as:

Boyles Law

a.  "b. "... other healthcare facilities,[1] ... This exemption shall be construed broadly to avoid any impacts to the delivery of healthcare, broadly defined.";

b.  "f. (ii). ... convenience stores, and other establishments engaged in the retail sale of ... liquor, beer, and wine";

c.  "f. (v). Newspapers, television, radio, and other media services;"

d.  "f. (viii). "... firearms businesses as provided for in Idaho Code section 46-601(3):"

e.  "f. (xi.) Educational institutions…for purposes of…performing essential functions, provided that social distancing of six-feet per person is maintained to the greatest extent possible;" and

f.  "f. (xxv.) Businesses that are able to operate via curbside services, drive in, drive through pick up, mailed services or delivery services."

44. As demonstrated by the declaration of Rev. Jonathon Krenz, including the e-mail from Moscow Police Chief Fry attached as Attachment 1 thereto, the Stay-Home Order has been interpreted by local law enforcement as prohibiting in-person church services with any form of physical exchange, though the same is permitted to the myriad stores and restaurants that remain open. See Exhibit D, Declaration of Rev. Krenz, incorporated herein.

45. Several other states, such as, inter alia, Arizona, Florida, and Texas have demonstrated that less-restrictive means are available by issuing orders classifying religious services as "essential" and allowing in-person gatherings that comply with social distancing and hygiene requirements just like non-religious "essential" businesses. See true and correct copies of the Arizona, Florida, and Texas orders, attached as Exhibits E, F, and G, respectively, and incorporated herein.

_____

[1] Four abortion clinics continue to operate as "essential businesses," ending the lives of 25 unborn children in Idaho each week.

VERIFIED COMPLAINT - 8

46. Those states have demonstrated that Defendants could pursue their stated objective of preventing the spread of COVID-19 without discriminating against religious gatherings and that they have less-restrictive alternatives available.

47. Nonetheless, the State of Idaho continues to threaten Plaintiffs with fines, arrest and a jail sentence, as cited above, should they exercise their rights under the U.S. and state constitutions and statutes.

48. Defendants have not even attempted, evaluated, or even considered less restrictive alternatives.

49. Declaratory and injunctive relief are therefore needed to preserve Plaintiffs' constitutional rights, as further explained herein.

## COUNT I:

### Violation of the Free Exercise Clause of the
### First Amendment to the U.S. Constitution

50. Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

51. Plaintiffs have the deep-seated sincerely-held religious beliefs that the Christian Bible, also known as Scripture, is the inerrant, infallible, efficacious, perspicuous, and all-sufficient Word of God.

52. Plaintiffs Jones and Gulotta, as pastors, have the deep-seated sincerely-held religious beliefs that they are required to personally and physically preach the Bible and administer the Sacraments of Holy Baptism and Holy Communion to their parishioners in a communal setting.

53. Plaintiff Herndon has the deep-seated sincerely-held religious belief that he is required to regularly attend church.

54. All Plaintiffs have the deep-seated sincerely-held religious beliefs, contained in the Bible, that they should, e.g., "not neglect[] to meet together, as is the habit of some, but encourag[e] one another, and all the more as [they] see the Day drawing near." (Hebrews 10:25 ESV).

Boyles Law

55. The media have widely documented the fact, and Plaintiffs request the Court to take judicial notice thereof, that people in Idaho may, according to the Stay-Home Order, park next to each other in the parking lots of various stores such as Albertson's, Home Depot, Lowe's, Super 1, and Walmart, and they can follow each other up and down the aisles and queue up in check-out lines in those stores.

56. However, according to the clear words of the Stay-Home Order, and according to the interpretation of Moscow Police Chief Fry (referenced above), they may not park in a church parking lot and exit their vehicles and follow each other into a church and queue up to receive a religious sacrament; indeed, they may not even do so in a drive-through format while remaining in their cars.

57. Thus, the Stay-Home Order is, both on its face and as applied, neither neutral nor generally applicable.

58. Rather, it specifically and discriminatorily targets the religious beliefs, speech, assembly, and viewpoints of Plaintiffs.

59. The Stay-Home Order, both on its face and as applied, targets Plaintiffs' free exercise of religion by prohibiting in-person gatherings and by prohibiting administration of their religious Sacraments.

60. The Stay-Home Order, both on its face and as applied, substantially and impermissibly burdens Plaintiffs' free exercise of religion by prohibiting in-person gatherings and by prohibiting administration of their Sacraments.

61. Plaintiffs are forced by the Stay-Home Order to either change their deep-seated sincerely-held religious beliefs or to act in contradiction to them; they are forced to choose between the requirements of their deep-seated sincerely-held religious beliefs in Scripture and the requirements imposed by the Stay-Home Order.

62. The Stay-Home Order, both on its face and as applied, places Plaintiffs in an irreconcilable conflict between the Stay-Home Order and their deep-seated sincerely-held religious beliefs.

Boyles Law

63. The Stay-Home Order, both on its face and as applied, places substantial pressure on Plaintiffs to violate their deep-seated sincerely-held religious beliefs by ignoring fundamental teachings of Scripture – to wit, the regular gathering together of believers and administration of Sacraments – as they have been interpreted and applied by Christians around the world, including during times of persecution, for millennia.

64. The Stay-Home Order, both on its face and as applied, constitutes a substantial burden on Plaintiffs' deep-seated sincerely-held religious beliefs.

65. The Stay-Home Order, both on its face and as applied, fails to accommodate Plaintiffs' deep-seated sincerely-held religious beliefs.

66. The State of Idaho lacks a compelling, legitimate, or rational interest in the Stay-Home Order's application of disparate standards for religious and non-religious entities and gatherings.

67. Even if the Stay-Home Order's restrictions on religious gatherings were supported by a compelling state interest (which they are not), they are not the least restrictive means available to accomplish the purported state interest, as evidenced by the rejection of the alternatives recited in Exhibit D.

68. The Stay-Home Order, both on its face and as applied, specifically targets Plaintiffs' deep-seated sincerely-held religious beliefs and established a system of exemptions that allows other similarly situated non-religious entities and gatherings to continue while prohibiting religious entities and gatherings, such as Plaintiffs' churches, church services, and administration of Sacraments, from operating with similar guidelines.

69. The Stay-Home Order, both on its face and as applied, has caused, is causing, and will continue to cause Plaintiffs immediate and irreparable harm, actual and undue hardship.

70. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their Constitutional rights.

71. THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

B Boyles Law

**COUNT II:**

**Violation of the Establishment Clause of the**

**First Amendment to the U.S. Constitution**

72. Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

73. As documented in Exhibit D, Declaration of Rev. Krenz, the Declaration of Plaintiff Herndon, attached as Exhibit I and incorporated by reference, the Declaration of Plaintiff Jones, attached as Exhibit J and incorporated by reference, and Declaration of Plaintiff Gulotta, attached as Exhibit H and incorporated by reference, the deep-seated sincerely-held religious beliefs of many Christians, such as Plaintiffs, require both a physical gathering together and a physical administration of the Sacraments.

74. However, as documented in Exhibit C, the only legal way, according to the Stay-Home Order, Plaintiffs may conduct church services is by live-streaming them (with a maximum of five people involved).

75. Put another way, the Stay-Home Order promotes those religions that can be practiced online, while inhibiting and chilling those religions and religious activities that cannot be practiced online.

76. Although live-streaming might be sufficient for some sincerely-held religious beliefs, it is not sufficient for the deep-seated sincerely-held religious beliefs of Plaintiffs.

77. Therefore, the Stay-Home Order is an unconstitutional establishment of religion, favoring those religions that can be practiced virtually and prohibiting those religions and religious activities that cannot.

78. The Stay-Home Order violates the Establishment Clause by prohibiting all live gatherings and explicitly promoting only online broadcast services, with no more than five people involved, thereby establishing the manner by which Christians and others will exercise their sincerely-held religious beliefs.

79. But, the Establishment Clause prohibits the State of Idaho from either dictating or prohibiting, under penalty of legal sanctions, the manner, style, form, practices, or

Boyles Law

sacraments of religious exercise, and thereby imposing its own version of religious exercise on every church and citizen in the state.

80. Indeed, the Stay-Home Order directly contravenes the Supreme Court's holding that, "no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

81. By imposing a mode of worship, the Stay-Home Order is imposing belief, according to the ancient theological maxim, "Lex Orandi, Lex Credendi"[2]: the law of prayer is the law of belief; otherwise said, how you worship will affect how – and therefore in whom – you believe.

82. Defendants, through the Stay-Home Order, are prescribing the only legally permitted manner of worship, and therefore what shall be orthodox versus what shall be prohibited in matters of religious worship, in direct violation of the Establishment Clause.

83. The Stay-Home Order, both on its face and as applied, demonstrates unconstitutional hostility toward religious gatherings.

84. The Stay-Home Order, both on its face and as applied, unconstitutionally favors certain non-religious gatherings over religious ones.

85. The Stay-Home Order, both on its face and as applied, orders churchgoers and other people attempting to exercise their religion how and where they may and may not worship, assemble together, or otherwise exercise their religion.

---

[2] The origin of this maxim is credited to the 5th-century Prosper of Aquitaine and disciple of St. Augustine of Hippo, who wrote urging the uniform administration of the Liturgy and Sacraments throughout the world: "ut legem credendi lex statuat supplicandi." He was arguing for uniform administration of the Liturgy and Sacraments "that the law of praying might establish the law of believing," to the end that the faith might therefore be "catholic" or "universal."

Boyles Law

86. The Stay-Home Order, both on its face and as applied, establishes lawful and unlawful methods of religious practice and worship, places limitations on how such religious practice and worship may and may not occur, and provides government approval for certain, novel forms of worship, while prohibiting the exercise of religion as it has been carried out in the world for two millennia and in the United States for 400 years since William Bradford and the other Pilgrims set foot on this soil.

87. The Stay-Home Order, both on its face and as applied, violates the Establishment Clause because it excessively entangles the government with religion.

88. The Stay-Home Order, both on its face and as applied, outright forbids, under penalty of law, all religious practice and worship that does not conform to the government-sanctioned practices.

89. The Stay-Home Order, both on its face and as applied, outright forbids, under penalty of law, the exercise of religion as it has been practiced worldwide for two millennia and in the United States for 400 years.

90. The Stay-Home Order, both on its face and as applied, has caused, is causing, and will continue to cause Plaintiffs immediate and irreparable harm and actual and undue hardship.

91. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their Constitutional rights.

92. THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

## COUNT III:

### Violation of Free Speech Protected under the

### First Amendment to the U.S. Constitution

93. Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

94. The Stay-Home Order, both on its face and as applied, is an unconstitutional prior restraint on Plaintiffs' free speech.

Boyles Law

95. The Stay-Home Order, both on its face and as applied, unconstitutionally discriminates on the basis of viewpoint.

96. The Stay-Home Order, both on its face and as applied, unconstitutionally discriminates on the basis of content.

97. The State of Idaho lacks a compelling, legitimate, or rational interest in the Stay-Home Order's application of disparate standards for religious and non-religious entities and gatherings.

98. Even if the Stay-Home Order's restrictions on religious gatherings were supported by a compelling state interest (which they are not), they are not the least restrictive means available to accomplish the purported state interest, as evidenced by the rejection of the alternatives recited in Exhibit D.

99. The Stay-Home Order, both on its face and as applied, fails to leave open alternative channels of communication for Plaintiffs.

100.    The Stay-Home Order, both on its face and as applied, is irrational and unreasonable and arbitrarily imposes unjustifiable and unreasonable restrictions on Plaintiffs' constitutionally protected speech.

101.    The Stay-Home Order, both on its face and as applied, impermissibly vests unfettered discretion in the hands of government officials, including Plaintiffs and their designees, to arbitrarily apply or not apply the Stay-Home Order in a manner to restrict free speech.

102.    The Stay-Home Order, both on its face and as applied, is under-inclusive by arbitrarily limiting its prohibitions to only certain persons or entities not classified in the Stay-Home Order as "essential."

103.    The Stay-Home Order, both on its face and as applied, is unconstitutionally over-broad and chills and abridges the free speech rights of Plaintiffs.

Boyles Law

104.    As documented in Exhibit A and described supra, the Stay-Home Order bans all "non-essential" travel and church and pastors are arbitrarily excluded from the definitions of "essential."

105.    Thus, should Plaintiffs travel anywhere for the purpose of preaching about the Christian God (other than a maximum of five for a live-stream broadcast), hearing the Word of God, administering a religious Sacrament, or receiving a Sacrament, as are required by their sincerely-held religious beliefs, they would be violating the Stay-Home Order.

106.    In the absence of declaratory and injunctive relief, Plaintiffs will continue to be irreparably harmed.

107.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their Constitutional rights.

108.    THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

**COUNT IV:**

**Violation of the Right to Assemble Protected under the**

**First Amendment to the U.S. Constitution**

109.    Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

110.    The First Amendment prohibits the State from violating Plaintiffs' right to peaceably assemble.

111.    The Stay-Home Order, both on its face and as applied, arbitrarily prohibits Plaintiffs from peacefully assembling with their respective church congregations for the purpose of exercising their religion.

112.    There is no legitimate, rational, substantial, or compelling governmental interest in the prohibition against such assemblies.

Boyles Law

113.   Specifically, there is no government interest in prohibiting religious gatherings with the same safeguards as are permitted to other "essential" businesses and activities.

114.   The Stay-Home Order, both on its face and as applied, arbitrarily fails to allow for less-restrictive means of meeting the stated objectives of the Stay-Home Order.

115.   The Stay-Home Order, both on its face and as applied, constitutes a violation of Plaintiffs' First Amendment rights because Plaintiffs and their fellow churchgoers are not any closer to one another than are the random customers at any of the businesses that the Stay-Home Order defines as "essential."

116.   Thus, the arbitrary prohibition against religious gatherings constitutes an as-applied violation of Plaintiffs' First Amendment right to assemble.

117.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their Constitutional rights.

118.   THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

**COUNT V:**

**Violation of Procedural and Substantive Due Process under the**

**Fifth and Fourteenth Amendments**

119.   Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

120.   The Due Process Clause of the Fifth Amendment, as applied through the Fourteenth Amendment, prohibits the State from depriving citizens of life, liberty, or property without due process of law.

121.   The right to due process of law includes the right to be free from vague or arbitrary guidelines granting officials unbridled discretion.

122.   The right to due process of law also includes the right to a hearing before a business is shut down.

Boyles Law

123.    It would border on ludicrous for anyone to suggest that the rights herein raised – speech and assembly and establishment of religion and free exercise of religion and equal treatment under the law – are anything except fundamental to our centuries-old legal system. The Supreme Court, and history itself, have left no room for that argument.

124.    As the Supreme Court said in *Brown v. Walker*, 161 U.S. 591 (1896):

As the object of the first eight amendments to the constitution was to incorporate into the fundamental law of the land certain principles of natural justice which had become permanently fixed in the jurisprudence of the mother country, the construction given to those principles by the English courts is cogent evidence of what they were designed to secure and of the limitations that should be put upon them. This is but another application of the familiar rule that, where one state adopts the laws of another, it is also presumed to adopt the known and settled construction of those laws by the courts of the state from which they are taken.

125.    And as it said the following year in *Robertson v. Baldwin*, 165 U.S. 275, 281 (1897):

The law is perfectly well settled that the first 10 amendments to the constitution, commonly known as the 'Bill of Rights,' were not intended to lay down any novel principles of government, but simply to embody certain guaranties and immunities which we had inherited from our English ancestors, and which had, from time immemorial, been subject to certain well-recognized exceptions, arising from the necessities of the case.

126.    Or as the Supreme Court said in *Grosjean v. American Press Co.*, 297 U.S. 233, 243–44 (1936) (held: a state tax was unconstitutional under the due process of law clause because it abridged the freedom of the press, a 1st Amendment right): "We concluded that certain fundamental rights, safeguarded by the first eight amendments against federal action, were also safeguarded against state action by the due process of law clause of the

Fourteenth Amendment, and among them the fundamental right of the accused to the aid of counsel in a criminal prosecution." Religion and assembly are also First Amendment rights.

127.    And as the Supreme Court said in *Malloy v. Hogan*, 378 U.S. 1, 10–11 (1964): "The Court thus has rejected the notion that the Fourteenth Amendment applies to the States only a watered-down, subjective version of the individual guarantees of the Bill of Rights."

128.    And in *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 784-85 (2010) (held: the 2nd Amendment applies to the States) the Court said:

> Under our precedents, if a Bill of Rights guarantee is fundamental from an American perspective, then, unless stare decisis counsels otherwise, that guarantee is fully binding on the States and thus limits (but by no means eliminates) their ability to devise solutions to social problems that suit local needs and values. As noted by the 38 States that have appeared in this case as amici supporting petitioners, "[s]tate and local experimentation with reasonable firearms regulations will continue under the Second Amendment."

Brief for State of Texas et al. 23.

129.    And just this year the Supreme Court said in *Ramos v. Louisiana*, No. 18-5924, 2020 WL 1906545, at *6 (U.S. Apr. 20, 2020), citing *Malloy v. Hogan*: "This Court has long explained, too, that incorporated provisions of the Bill of Rights bear the same content when asserted against States as they do when asserted against the federal government."

130.    There is a self-evident constitutional problem when beer, wine, whiskey, guns, and abortions are permitted in Idaho (see Section 8 of the Stay-Home Order), but an ordinary Sunday church service, the same as has been practiced since the Pilgrims arrived here, is illegal.

131.    All fundamental constitutional rights are, as a matter of law, "essential."

Boyles Law

132.     The church-closure order within the Stay-Home Order violates the Due Process Clause of the Fifth and Fourteenth Amendments in that, by its express terms, it arbitrarily shuts down all church activities including Plaintiffs' church activities without any advance notice or warning, and without any hearing.

133.     The church-closure order as amended by the "Additional Guidance on Statewide Stay-Home Order" (Exhibit C) violates the Due Process Clause of the Fifth and Fourteenth Amendments because, by its express terms, it arbitrarily caps church attendance at 5 people (and that only for the purpose of recording) without any explanation, and without any discussion over how Plaintiffs' particular congregations arrange themselves, whereas more than 5 people can and do distance themselves 6 feet from other customers while in businesses that are allowed to remain open.

134.     As documented in the declarations, law enforcement have told the pastors that the order prohibits church gatherings with more than 5 people total.

135.     Thus, the State's church-closure order violates the Due Process Clause of the Fifth and Fourteenth Amendments facially.

136.     Thus, the State's church-closure order violates the Due Process Clause of the Fifth and Fourteenth Amendments as it is applied to Plaintiffs specifically.

137.     The Stay-Home Order summarily and arbitrarily deprives Plaintiffs and all citizens in Idaho of their usual Sunday church attendance.

138.     The Stay-Home Order summarily and arbitrarily deprives Plaintiffs and all citizens in Idaho of any in-person reception of any religious sacrament at all.

139.     Summarily and arbitrarily depriving citizens in Idaho of their usual Sunday church attendance and any in-person reception of any religious sacrament at all, necessarily violates Substantive Due Process, for it is a denial of several protected constitutional rights: religion, speech, assembly, and Equal Protection.

140.     Summarily and arbitrarily quarantining citizens is also a violation of Due Process.

Boyles Law

141.    Further, Defendants have not shown a compelling reason for these violations of constitutional rights, nor can they.

142.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their Constitutional rights.

143.    THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

## COUNT VI:

### Violation of Equal Protection under the Fourteenth Amendment

144.    Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

145.    The Stay-Home Order, both on its face and as applied, is an unconstitutional abridgment of Plaintiffs' right to equal protection under the law, is not neutral, and specifically targets religious gatherings for unequal treatment.

146.    Under the Stay-Home Order, Plaintiff Jones and Gulotta and their parishioners may legally drive to McDonald's, talk to the McDonald's employee through the open car window, hand that employee money, receive change back from the hand of that employee, and receive food and drinks through the car window from another employee's hands.

147.    But, as documented in Exhibit D, Declaration of Rev. Krenz, these same parishioners may not legally drive to any parking lot or any driveway, stop their cars, talk to Plaintiffs Jones or Gulotta or any clergy through their open car windows, and receive food and drink (the Sacrament of the Lord's Supper) from the hand of Plaintiff Jones or any clergy through that car window.

148.    That disparity is a targeted discrimination against the practice of religion.

149.    The Stay-Home Order, both on its face and as applied, violates the Equal Protection Clause by arbitrarily treating Plaintiffs differently from other similarly situated

Boyles Law

non-religious persons on the basis of the content and viewpoint of their gatherings and speech.

150.    There is no compelling state reason, or legitimate purpose, in allowing citizens to interact with other people in a drive-through food line and when receiving deliveries at their front door, but not when attending church services in their car.

151.    More specifically, there is no compelling state reason or legitimate purpose in allowing citizens to interact with other people in a drive-through food line, or when receiving deliveries at their front door, but not with Plaintiffs Jones and Gulotta or another pastor in the context of receiving religious sacraments.

152.    The State does not have a compelling reason for shutting down live church services while keeping other live businesses open where there is similar public exposure, nor has the State selected the least restrictive means to further any purported interest.

153.    That is, the disparity mentioned above demonstrates that the government action has no rational relationship with the stated purpose of curtailing the spread of COVID-19; if it did, then drive-through food service and home delivery of food would also be forbidden.

154.    The Stay-Home Order, both on its face and as applied, unconstitutionally discriminates between religious and non-religious gatherings.

155.    Further, by expressly allowing churches to operate via live-streaming while forbidding churches from any in-person gatherings or administration of the Sacraments, the State has overtly favored religious beliefs that can be exercised virtually.

156.    The State does not have a compelling, legitimate, or rational reason or purpose for this favoritism of some religions over others.

157.    Neither has the State selected the least restrictive means to further any purported legitimate government interest.

158.    The Stay-Home Order, both on its face and as applied, is arbitrary and lacks a rational basis.

Boyles Law

159.    The Stay-Home Order, both on its face and as applied, is arbitrary, irrational, and unjustifiable and imposes arbitrary, irrational, and unjustifiable restrictions on Plaintiffs' religious gatherings.

160.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their Constitutional rights.

161.    THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

**COUNT VII:**

**Idaho Religious Freedom Act (I.C. 73-402)**

162.    Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

163.    Plaintiffs incorporate by reference all paragraphs in Counts I through VI, supra.

164.    Idaho Code § 73-402, also known as the Religious Freedom Restoration Act (RFRA), begins with these words: "Free exercise of religion is a fundamental right that applies in this state, even if laws, rules or other government actions are facially neutral."

165.    If free exercise of religion is a fundamental right, then it is, by definition, "essential."

166.    That statute further provides as a general matter that state government "shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability."

167.    For the reasons expressed above, the Stay-Home Order, which purports to be a rule of general applicability for the entire State of Idaho, arbitrarily imposes upon Plaintiffs a substantial burden on the exercise of religion.

168.    RFRA provides that the state government can "substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person is

Boyles Law

both: (a) Essential to further a compelling governmental interest; (b) The least restrictive means of furthering that compelling governmental interest."

169.     As explained above, the outright closure of live church is not essential to further a state government interest; e.g., there is no material difference between drive-through food service or home-delivery of pizza, and, for instance, the several proposals that Rev. Krenz proposed to Police Chief Fry, as described in the former's Declaration, Exhibit D.

170.     For the same reasons, the outright closure of live church is not the least restrictive means of furthering the government's stated interest.

171.     Thus, Plaintiffs are suffering a violation of their state religious freedom.

172.     In the absence of declaratory and injunctive relief, Plaintiffs will continue to be irreparably harmed.

173.     THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra, and award Plaintiffs mandatory attorneys' fees pursuant to I.C. § 73-402(4).

## COUNT VIII:

## Idaho Constitution Art. 1 Sec. 1 Freedom

174.     Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

175.     Plaintiffs incorporate by reference all paragraphs in Counts I through VII, supra.

176.     The Idaho Constitution provides that, "All men are by nature free and equal, and have certain inalienable rights, among which are enjoying and defending life and liberty; acquiring, possessing and protecting property; pursuing happiness and securing safety."

177.     Further, Defendants have not shown a compelling reason for these violations of constitutional rights, nor can they.

Boyles Law

178.    In the absence of declaratory and injunctive relief, Plaintiffs will continue to be irreparably harmed.

179.    THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

**COUNT IX:**

**Idaho Constitution Art. 1 Sec. 4 Religious Liberty**

180.    Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

181.    The Idaho Constitution provides that, "The exercise and enjoyment of religious faith and worship shall forever be guaranteed."

182.    Plaintiffs incorporate by reference all paragraphs in Counts I through VII, supra.

183.    In the absence of declaratory and injunctive relief, Plaintiffs will continue to be irreparably harmed.

184.    THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

**COUNT X:**

**Idaho Constitution Art. 1 Sec. 9 Free Speech**

185.    Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

186.    The Idaho Constitution provides that every person may freely speak on all subjects.

187.    Plaintiffs incorporate by reference all paragraphs in Counts I through VII, supra.

188.    In the absence of declaratory and injunctive relief, Plaintiffs will continue to be irreparably harmed.

Boyles Law

189.    THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

## COUNT XI:

### Idaho Constitution Art. 1 Sec. 10 Right of Assembly

190.    Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

191.    The Idaho Constitution provides that the people of Idaho shall have the right to assemble in a peaceable manner.

192.    Plaintiffs incorporate by reference all paragraphs in Counts I through VII, supra.

193.    In the absence of declaratory and injunctive relief, Plaintiffs will continue to be irreparably harmed.

194.    THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

## COUNT XII:

### Idaho Constitution Art. 21 Sec. 19 Religious Freedom Guaranteed

195.    Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

196.    Plaintiffs incorporate by reference all paragraphs in Counts I through VII supra.

197.    The Idaho Constitution provides that "perfect toleration of religious sentiment shall be secured."

198.    In the absence of declaratory and injunctive relief, Plaintiffs will continue to be irreparably harmed.

## COUNT XIII:

### Religious Land Use and Institutionalized Persons Act

### 42 U.S.C. §§ 2000cc-2000cc-5

199.    Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

200.    Plaintiffs incorporate by reference all paragraphs in Counts I through VI and XII, supra.

201.    Under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc-2000cc-5 (RLUIPA), "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution." 42 U.S.C. § 2000cc(a)(1).

202.    To justify religious restrictions, the State must demonstrate that the burden it imposes is supported by a compelling state interest and is the least restrictive means to further that alleged state interest.

203.    The RLUIPA also prohibits the State from "impos[ing] or implement[ing] a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1).

204.    The RLUIPA further prohibits the State from "impos[ing] or implement[ing] a land use regulation that (A) totally excludes religious assemblies from a jurisdiction; or (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(3).

205.    The Stay-Home Order, both on its face and as applied, arbitrarily precludes Plaintiffs' exercise of their sincerely-held religious beliefs by prohibiting religious gatherings; in other words, Plaintiffs' use of their church lands is substantially burdened.

206.    Plaintiffs are forced by the Stay-Home Order to either change their deep-seated sincerely-held religious beliefs or to act in contradiction to them; they are forced to choose between the requirements of their deep-seated sincerely-held religious beliefs in Scripture and the requirements imposed by the Stay-Home Order.

207.    The Stay-Home Order, both on its face and as applied, constitutes a substantial burden on Plaintiffs' sincerely-held religious beliefs.

Boyles Law

208.   The State of Idaho lacks a compelling, legitimate, or rational interest in the Stay-Home Order's application of disparate standards for religious and non-religious entities and gatherings.

209.   Even if the Stay-Home Order's restrictions on religious gatherings were supported by a compelling state interest (they are not), they are not the least restrictive means available to accomplish the purported state interest, as evidenced by the rejection of the alternatives recited in Exhibit D.

210.   The Stay-Home Order, both on its face and as applied, has caused, is causing, and will continue to cause Plaintiffs immediate and irreparable harm and actual and undue hardship.

211.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their Constitutional rights.

212.   THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

## V.      PRAYER FOR RELIEF

Wherefore, Plaintiffs respectfully request relief as follows:

A.  That the Court issue a Temporary Restraining Order restraining and enjoining Defendants, all State officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with the Stay-Home Order or any other order to the extent any such order prohibits religious worship services at any church or place of religious worship in Idaho, including in-person church services at any such place of worship that meets the "social distancing" and other sanitary requirements applicable to "essential" businesses and services that are and have been permitted under the Stay-Home Order to remain open to large public gatherings.

B Boyles Law

B.  That the Court enter a permanent Order declaring that Defendants have unlawfully burdened Plaintiffs' rights as claimed herein.

C.  That the Court permanently enjoin Defendants from prohibiting Plaintiffs from physically gathering for religious purposes, including, without limitation, administration of Sacraments.

D.  That the Court retain jurisdiction over the matter for the purposes of enforcing the Court's order.

E.  That the Court declare Plaintiffs as prevailing parties and award them the reasonable costs and expenses of this action, including reasonable attorney fees, in accordance with 42 U.S.C. § 1988 and I.C. § 73-402(4).

F.  That the Court grant such other and further relief as the Court deems equitable and just under the circumstances.

Respectfully submitted this 30th day of April, 2020

By:     BOYLES LAW, PLLC

_/s/  D. Colton Boyles_
D. Colton Boyles, ISB# 10282
BOYLES LAW, PLLC
PO Box 1242
319 Church Street
Sandpoint, Idaho 83864
Phone: (575) 808-9137
Colton@CBoylesLaw.com

Nathaniel K. MacPherson*
Bradley Scott MacPherson*
The MacPherson Group, LLC
24654 North Lake Pleasant Parkway
Suite 103-551
Peoria, AZ 85383-1359
Phone: (623) 209 - 2003
nathan@beatirs.com
scott@beatirs.com

Attorneys for Plaintiff

*_Pro hac vice_ application pending

VERIFIED COMPLAINT - 29

VERIFICATION

I certify under penalty of perjury pursuant to Idaho Code § 9-1406 and 28 U.S.C.

§ 1746 that the foregoing Verified Complaint is true and correct.

Date

4/30/2020

Signature
SCOTT HERNDON

Date

4/30/2020

Signature
REV. JOSH JONES

Date

4-30-2020

Signature
REV. MICHAEL GULOTTA