D. COLTON BOYLES, ISB# 10282
BOYLES LAW, PLLC
PO Box 1242
319 Church Street
Sandpoint, Idaho 83864
Phone: (575) 808-9137
Colton@CBoylesLaw.com

Nathaniel K. MacPherson*
Bradley Scott MacPherson*
The MacPherson Group, LLC
24654 North Lake Pleasant Parkway
Suite 103-551
Peoria, AZ 85383-1359
Phone: (623) 209 - 2003
nathan@beatirs.com
scott@beatirs.com

Attorneys for Plaintiff

*Pro hac vice application pending

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

SCOTT HERNDON, *et al.*,

Plaintiffs,

v.

BRADLEY JAY LITTLE, *et al.,*

Defendants.

CASE NO.: 1-20-cv-00205-DCN

**AMENDED
VERIFIED COMPLAINT FOR
DECLARATORY RELIEF,
TEMPORARY RESRAINING
ORDER, PRELIMINARY AND
PERMANENT INJUNCTIVE
RELIEF**

Plaintiffs Scott Herndon, Rev. Josh Jones, Rev. Michael Gulotta, Rev. Tim Remington, Gabriel Rench, Chris Schueler, and Don Martin bring this action to declare unconstitutional the Order to Self-Isolate of the Director of the Idaho Department of Health and Welfare dated March 25, 2020, and amended on April 15, 2020 (Stay-Home Order), as well as the orders dated May 1, 2020 (Stay-Healthy Order 1) and May 16, 2020 (Stay-

Boyles Law

Healthy Order 2), and to stop Governor Little and Director Jeppesen from violating their rights under the First, Fifth, and Fourteenth Amendments of the United States Constitution, the Religious Land Use and Institutionalized Persons Act, Articles 1 and 21 of the Idaho Constitution, and the Idaho Religious Freedom Restoration Act. Plaintiffs allege as follows:

## I.   OVERVIEW

1.      In Idaho, it is lawful to have bread and wine delivered to your house, whether through a common carrier such as FedEx, UPS, or the USPS, or through a delivery service such as DoorDash, Grubhub, or Uber Eats.

2.      However, if the person delivering the bread and wine happens to be a pastor, if instead of "here's your food," he says, "The Lord Jesus Christ, on the night He was betrayed, took bread…," and if you and the pastor believe that he is, by doing so, administering to you the Sacrament of Holy Communion, then you have both violated the Stay-Home Order. That is a crime.

3.      The only difference between the two scenarios is (1) the Word of God being spoken and (2) the religious beliefs of the parties involved.

4.      Furthermore, you may legally congregate with family and friends – with proper "social distancing" – at the local Albertson's, Fred Meyer, or Super 1, but under the Stay-Home Order, not at your local church. Obtaining a loaf of sandwich bread is "essential" and legal but attaining the "Bread of Life" is a crime, according to the Stay-Home Order.

5.      The only difference between those two scenarios is the religious purpose involved, as both can be conducted in accordance with CDC health guidelines.

6.      Similarly, it is lawful to travel from any other state to Idaho to immediately purchase and consume bread and wine, but traveling from any other state to Idaho to immediately receive and consume bread and wine from a pastor, or even to immediately attend any religious service at all, is a crime according to the Stay-Healthy Order 1.

7.      The only difference between these two scenarios is also the religious purpose involved.

Boyles Law

8.     Plaintiffs seek an order restraining enforcement of the Stay-Home Order and the Stay-Healthy Order 1, which purported to prohibit them, on pain of criminal sanctions including arrest and imprisonment, from gathering together in any location regardless of whether they meet or exceed the "social distancing" and hygiene guidelines, or engaging in interstate travel for religious purposes, respectively.

9.     Plaintiffs specifically seek a judgment that these provisions of the Stay-Home Order and the Stay-Healthy Order are unconstitutional and have violated Plaintiffs' constitutional rights, and that Defendants, who purport to reserve in the Stay-Healthy Order 2 the right to "rescind[], supersede[], or amend[]" the same, be restrained and enjoined from reverting to and enforcing these provisions in the future.

10.     Plaintiffs note that Defendants still claim to have emergency powers and that restrictions will continue well into the future and will be based upon scientific and/or medical data; thus, Defendants specifically claim the power to return to more draconian measures such as those imposed under the Stay-Home Order and the Stay-Healthy Order 1.

11.     The Stay-Home Order and Stay-Healthy Order 1 discriminatorily allowed "essential" businesses and activities to continue unfettered with large crowds of people only because those gatherings are not "faith based" or for "spiritual" purposes.

12.     As demonstrated herein, the Stay-Home Order was interpreted by local law enforcement such that most churches closed and most religious gatherings ceased, and those that continued did so under actual threat of intervention by local and state law enforcement.

13.     Similarly, the Stay-Healthy Order 1, on its face, imposes greater restrictions on religious gatherings than on "essential" activities and outright prohibits interstate travel for religious purposes while permitting it for "essential" ones.

14.     The Governor of Kansas imposed less draconian restrictions on religious gatherings than those in Idaho, allowing up to 10 individuals to continue to gather, yet on April 18, 2020, the United States District Court for the District of Kansas issued a TRO enjoining its enforcement and ordering the government of Kansas to treat "religious" gatherings the same

Boyles Law

as secular ones. See First Baptist Church v. Kelly, No. 20-1102-JWB, 2020 WL 1910021, *6–7 (D. Kan. Apr. 18, 2020). Notable in the First Baptist TRO is the holding that the Kansas order violated the Free Exercise Clause, because "religious activities were specifically targeted for more onerous restrictions than comparable secular activities." Id. at *7.

15.     Like the Idaho Stay-Home Order, which specifically ordered the immediate cessation of all "spiritual" and "faith-based" gatherings of any size, so, too, the Kansas order singled out religious gatherings while permitting other non-religious activities. The Court held that this disparate treatment, "show[s] that these executive orders expressly target religious gatherings on a broad scale and are, therefore, not facially neutral," Id. at *7.

16.     As Free Exercise Clause jurisprudence demonstrates, "it goes without saying that the government could not lawfully expressly prohibit individuals from meeting together for religious services." Id. at *6.

## II.     PARTIES

17.     Plaintiff Scott Herndon is a resident of Sagle, Bonner County, Idaho, who wished to attend the local church because the same had ceased operation in obedience to the governor's Stay-Home Order and was prohibited from traveling to another state for religious purposes by both the Stay-Home Order and the Stay-Healthy Order 1.

18.     Plaintiff Josh Jones is a resident of Laclede, Bonner County, Idaho, and pastor of Laclede Community Church in Laclede, Idaho, who risked criminal sanctions if he continued to hold church services and otherwise carry out his vocation as a pastor or to allow someone engaged in interstate travel to attend his church in Idaho. He was even advised by the local Sheriff that he would do so at the continual risk of arrest by the Idaho State Police.

19.     Plaintiff Michael Gulotta is a resident of Grangeville, Idaho County, Idaho, and pastor of Grangeville Christian Reformed Church in Grangeville, Idaho, who risked criminal sanctions if he continued to hold church services and otherwise carry out his vocation as a pastor or to allow someone engaged in interstate travel to attend his church in Idaho.

Boyles Law

20.     Plaintiff Tim Remington is a resident of Kootenai County, Idaho, and pastor of The Altar Church in Coeur d'Alene who was forced to shut down not only his church services but also his drug and alcohol counseling as a result of the Stay-Home Order.

21.     Plaintiff Gabriel Rench is a resident of Moscow, Latah County, Idaho, who was unable to attend regular church services or receive the Sacraments because his church had ceased the same in obedience to the governor's Stay-Home Order and was prohibited from traveling to another state for religious purposes by both the Stay-Home Order and the Stay-Healthy Order 1.

22.     Plaintiff Chris Schueler is a resident of Kootenai County, Idaho, who was precluded, at risk of criminal prosecution, from corporate worship in his home or others' homes, in Idaho or in another state.

23.     Plaintiff Don Martin is a resident of Boise, Ada County, Idaho, who who wished to attend the local church because the same had ceased operation in obedience to the governor's Stay-Home Order and was prohibited from traveling to another state for religious purposes by both the Stay-Home Order and the Stay-Healthy Order 1.

24.     Defendant Bradley Jay Little ordered the issuance of the Stay-Home Order, the Stay-Healthy Order 1, and the Stay-Healthy Order 2 at issue in this case and is sued in his official capacity as the Governor of Idaho.

25.     Defendant Dave Jeppesen, at the direction of Governor Little, issued the Stay-Home Order, the Stay-Healthy Order 1, and the Stay-Healthy Order 2 at issue in this case and is sued in his official capacity as the Director of the Idaho Department of Health and Welfare.

## III.     <u>JURISDICTION AND VENUE</u>

26.     This action arises under the First and Fourteenth Amendments to the United States Constitution and the Religious Land Use and Institutionalized Persons Act, and is brought under 42 U.S.C. § 1983 and 42 U.S.C. §§ 2000cc-2000cc-5.

Boyles Law

27.     This action also arises under Article I, Sections 1, 4, 9, and 10 of the Idaho Constitution, Article 21, Section 19 of the Idaho Constitution, and the Idaho Religious Freedom Restoration Act, Idaho Code § 73-401 *et seq.*

28.     This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343.

29.     This Court has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

30.     This court has the authority to grant the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202, the requested injunctive relief under 28 U.S.C. § 1343, and reasonable attorney's fees and costs under 42 U.S.C. § 1988 and I.C. § 73-402(4).

31.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part, if not all, of the events or omissions giving rise to the claims occurred in this district and Defendants reside in this district.

32.     On May 1st, the day after the original Complaint was filed, Defendants' revised order called the "Stay-Healthy Order, Stage 1" took effect. The May 1 "Stay Healthy Order, Stage 1" is attached as Exhibit K and incorporated herein ("Stay-Healthy Order 1").

33.     The Stay-Healthy Order 1 was not available to Plaintiffs or their Counsel at the time the original complaint was filed.

34.     Among other things, the Stay-Healthy Order 1 purported to only permit church services subject to certain mandatory social distancing and sanitation requirements not imposed on secular activities.

35.     The Stay-Healthy Order 1 also purported to prohibit interstate travel for religious purposes (whether traveling from Idaho to another state for religious purposes, or traveling from another state to Idaho for religious purposes), while permitting the same for certain secular purposes.

36.     On May 6, Plaintiffs' Counsel sent Defendants' Counsel, at the latter's request, a detailed letter addressing their constitutional concerns and other issues with the Stay-Home

Boyles Law

Order and the Stay-Healthy Order 1, and requesting amendment of the same to bring it into compliance with state and federal constitutions and laws. The May 6 letter is attached as Exhibit L and incorporated herein ("May 6 Letter").

37.    On May 8 and again on May 13, Plaintiffs' Counsel and Defendants' Counsel held telephonic settlement conferences.

38.    On May 14, Defendants promulgated the "Stay Healthy Order, Stage 2," which took effect on May 16. The May 16 "Stay Healthy Order, Stage 2" is attached as Exhibit M and incorporated herein ("Stay-Healthy Order 2").

39.    The Stay-Healthy Order 2 generally incorporates the changes requested by Plaintiffs in their May 6 Letter, among other changes.

40.    On information and belief, the incorporation in the Stay-Healthy Order 2 of the changes requested by Plaintiffs in their May 6 letter is a direct result of the original Complaint and the May 6 letter and the parties' telephone conversations.

41.    On information and belief, as a direct result of Plaintiffs' Complaint and May 6 letter, the Defendants also amended the Guidelines for Opening Up Idaho to remove mandatory language applicable to places of worship which originally stated on page 6, "Places of worship can open if they adhere to strict physical distancing, sanitation protocol, and any CDC guidance," but now states that "Places of worship can open and should adhere to physical distancing, sanitation protocol, and any state and CDC guidance." Exhibit T is attached and incorporated herein (showing first the old version of the guidelines at the time of the filing of the Complaint, and the new version as it exists at the time of this filing).

42.    On information and belief, as a direct result of Plaintiffs' Complaint and May 6 letter, the Defendants also amended the Rebound.Idaho.gov website to remove mandatory language applicable to places of worship which originally stated under the Stage 1 guidance that, "Places of worship can open if they adhere to strict physical distancing, sanitation protocol, and any CDC guidance," but now states that "Places of worship can open and should adhere

Boyles Law

to physical distancing, sanitation protocol, and any state and CDC guidance." Exhibit U is attached and incorporated herein (showing the old and then new versions of the website).

43.     On information and belief, the Defendants did not make these changes pursuant to scientific or medical advice.

44.     On information and belief, the Defendants made these changes in response to the original Complaint and May 6 letter.

45.     The Stage 2 Guidance on the IdahoRebounds.gov website states that, "Gatherings, both public and private, of less than 10 people, where appropriate physical distancing and precautionary measures are observed can occur." This language is interpreted by the Plaintiffs and widely by the public to be a part of the four corners of the "Order." It contains mandatory language, and as such, is enforceable.

46.     The Idaho.Rebound.gov website the Guidelines for Opening Up Idaho, and other amorphous CDC guidance as they exist at the time each Order becomes effective, are incorporated into each Order and constitute a part of the four corners of each Order for purposes of its interpretation and enforcement.

47.     On information and belief, the Defendants' amendment contained in the Stay-Healthy Order 2, in seemingly eliminating the unconstitutional and unlawful aspects of the Stay-Healthy Order 1, is an attempt by Defendants to avoid judicial review of the constitutionality and legality of the Stay-Home Order and the Stay-Healthy Order.

48.     However, by its own terms, at paragraphs 9 and 11, the Stay-Healthy Order 2 can be "extended, rescinded, superseded, or amended" and/or government agencies at any time "may enact more stringent public health orders than those set out in [the Stay Healthy Order of May 16]."

49.     Those same paragraphs in the "Stay-Healthy Order 1" have the same language.

50.     The "Frequently Asked Questions" page on the State of Idaho's website, https://coronavirus.idaho.gov/frequently-asked-questions/ accessed on May 1, 2020, states the same:

Boyles Law

Q: How long will the order last?

A: The order is effective as of 12:00 a.m. May 16 [or May 1], 2020, and will continue to be in effect until it is extended, rescinded, superseded, or amended in writing by the Governor and the Idaho Department of Health and Welfare.

Q: Can the order be changed?

A: Yes. As the situation changes and more information is available, the Governor and public health officials can issue new orders and directives as needed.

51.     Thus Defendants believe, and have publicly stated, that, should they perceive the need to reimpose the stricter measures of their prior Orders, they can and they will.

52.     Defendants' Guidelines for Opening Up Idaho states: "To advance to the next stage, all criteria must be met. If the criteria indicates trends are beginning to move the wrong direction, or there is evidence that a stage has adversely impacted rates, stages may have to be extended or reversed." (emphasis removed). Exhibit T, p. 2.

53.     Plaintiffs assert that the exception to mootness of "capable of repetition, yet evading review" applies to this lawsuit. See, e.g., *McCormack v. Hiedeman*, 900 F. Supp. 2d 1128, 1138 (D. Idaho 2013), aff'd sub nom. *McCormack v. Herzog*, 788 F.3d 1017 (9th Cir. 2015) (a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice); *Riggs v. Valdez*, No. 1:09-CV-010-BLW, 2010 WL 4117085, at *2 (D. Idaho Oct. 18, 2010) (applying the exception to a prisoner's lawsuit, recognizing that prisoner's are often released before their case is heard); *Murphy v. Hunt*, 455 U.S. 478, 482–83 (1982) (setting forth the test as (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.)

54.     According to the Orders, Guidelines for Opening Idaho, Idaho.Rebound.gov website and Defendants public statements, the state's current position is that it may "reverse" stages and reimpose any prior Order.

Boyles Law

55.     The Stages are reevaluated every two weeks. This duration is too short to fully litigate the challenged actions prior to their cessation or expiration.

56.     According to a May 2, 2020 CNN article, the nation's top infectious disease doctor, Anthony Fauci, says a second round of Covid-19 is "inevitable." Exhibit V is attached and incorporated herein. Dr. Anthony Fauci is quoted as saying, "I'm almost certain it will come back…."

57.     The director of the May Clinic's Vaccine Research Group, Dr. Greg Poland is quoted as saying that the "second wave [will be] worse." Exhibit V.

58.     The Director of the Center for Infectious Disease Research and Policy, Mike Osterholm, stated that "[t]his thing's not going to stop until it infects 60 to 70 percent of people. The idea that this is going to be done soon defies microbiology." Exhibit V.

59.     Widespread coverage and statements by scientific authorities create a reasonable expectation and demonstrate a probability that the pandemic is not over and a second round is "inevitable." Exhibit V.

60.     Thus, this Court has the jurisdiction to review the constitutionality and legality of the Stay-Home Order, the Stay-Healthy Order 1, and the Stay-Healthy Order 2.

## IV.     FACTS

### A.   The Stay-Home Order and Stay-Healthy Order 1 and Stay-Healthy Order 2, in General

61.     On March 25, 2020, Idaho Governor and Defendant Bradley Jay Little ordered the Director of the Idaho Department of Health and Welfare to issue an Order to Self-Isolate. The same day Defendant Dave Jeppesen, Director of the Idaho Department of Health and Welfare, issued an Order to Self-Isolate.

62.     That Stay-Home Order was amended on April 15, 2020. True and correct copies of the Stay-Home Order, the Governor's Proclamations as amended, and the Stay Healthy Order along with the CDC guidelines are attached as Exhibit A and incorporated herein ("Stay-Home Order").

Boyles Law

63.     The Stay-Home Order directs "all businesses" to cease "nonessential operations" and "prohibit[s] all non-essential gatherings of any number of individuals."

64.     Section 7 of the Stay-Home Order prohibits intrastate travel "except for those purposes defined in Section 8."

65.     Section 8 of the Stay-Home Order prohibits individuals from traveling away from their residence except to perform "Essential Activities" as defined therein.

66.     The Stay-Home Order requires all persons engaged in interstate travel that is not for an "Essential Purpose" to "self-quarantine for 14 days."

67.     Religious purposes are not an "Essential Purpose" under the Stay-Home Order.

68.     The first page of the Stay-Home Order bears the following sentences: "Please read this Order carefully. Violation of or failure to comply with this Order could constitute a misdemeanor punishable by fine, imprisonment, or both. Idaho Code § 56-1003(7)(C)."

69.     Idaho Code § 56-1003(7)(C) reads: "Any person who violates an order of isolation or quarantine shall be guilty of a misdemeanor."

70.     Idaho Code Ann. § 18-111B defines "misdemeanor" as follows: "Wherever the words misdemeanor, petty misdemeanor or violation are used in the entire Idaho Code as well as the 1972 Session Law amendments thereto, these terms or any of them shall be construed to mean misdemeanor and shall be punished, unless otherwise provided for in a specific act, as provided under the General Misdemeanor Statute contained in section 18-113, Idaho Code."

71.     Idaho Code § 18-113(1) sets forth the punishment for a misdemeanor in the following words: "Except in cases where a different punishment is prescribed in this code, every offense declared to be a misdemeanor, is punishable by imprisonment in a county jail not exceeding six (6) months, or by a fine not exceeding one thousand dollars ($1,000), or by both."

72.     The Idaho Governor and the Idaho Attorney General have both stated verbally and in writing that the Stay-Home Order is enforceable.

AMENDED COMPLAINT - 11

73.     Idaho Governor and Defendant Bradley Jay Little and Director of the Idaho Department of Health and Welfare and Defendant Dave Jeppesen issued the Stay-Healthy Order 1 effective May 1, 2020.

74.     The Stay-Healthy Order 1 requires all persons engaged in interstate travel that is not for an "Essential Purpose" to "self-quarantine for 14 days."

75.     Religious purposes are not an "Essential Purpose" under the Stay-Healthy Order 1.

76.     Idaho Governor and Defendant Bradley Jay Little and Director of the Idaho Department of Health and Welfare and Defendant Dave Jeppesen issued the Stay-Healthy Order 2 effective May 16, 2020.

77.     The Stay-Healthy Order 2 appears, at first glance, to address the issues Plaintiffs raise in this case.

78.     However, at closer examination, the Stay-Healthy Order 2 allows Defendants to violate Plaintiffs' constitutional rights because by its own terms, at paragraphs 9 and 11, the Stay-Healthy Order 2 can be "extended, rescinded, superseded, or amended" and/or government agencies at any time "may enact more stringent public health orders than those set out in [the Stay Healthy Order of May 16]."

79.     On information and belief, absent a court order prohibiting it, Defendants would return to the restrictions imposed by the Stay-Home Order and/or Stay-Healthy Order 1 if their scientific and medical experts advised them to do so.

80.     Plaintiffs reasonably fear and expect that Defendants will again subject them to the restrictions imposed by the Stay-Home Order and Stay Healthy Order 1, whether over the next several weeks or later this coming winter.

**B.     The Stay-Home Order and Stay-Healthy Order 1 with Respect to Religion**

81.     Church attendance is not included in the definition of "Essential Activities" in the Stay-Home Order or Stay-Healthy Order 1.



82.     Pastoral work is not included in the definition of "Essential Activities" in the Stay-Home Order or Stay-Healthy Order 1.

83.     Essential and non-essential business, operations, and activities are further defined in a supplementary document titled "Essential Services." See Exhibit B, attached.

84.     Churches are not defined as "essential services" in that supplementary document.

85.     Pastors are not defined as essential workers in that supplementary document, either.

86.     Further guidance for the Stay-Home Order is given in another supplementary document titled "Additional Guidance on Statewide Stay-Home Order." See Exhibit C, attached.

87.     That "Additional Guidance" clarifies that churches may legally livestream their religious services "so long as only the minimum personnel necessary to stream the service (no more than 5) and the individuals maintain the Social Distancing Requirements in the Order."

88.     In other words, per the Stay-Home Order as supplemented by the aforementioned documents, in the State of Idaho, no pastor may legally perform his usual Sunday church services in his usual church building with the usual parishioners in attendance; he may only conduct a live or recorded video presentation, and only as long as no more than four other people are present with him in the building. Everyone else in his congregation who normally would attend, are prohibited from attending.

89.     Further, because only "essential" intrastate travel is permitted under the Stay-Home Order, a pastor may not legally travel to the homes of his congregants for the purpose of conducting in-home church services or administering the sacraments of his religion with them at their homes.

90.     Likewise, under the Stay-Healthy Order 1, only "essential" interstate travel is permitted without a mandatory 14-day self-quarantine and thus a pastor may not legally travel to the homes of his congregants in neighboring states, nor congregants in neighboring states travel to churches in Idaho, for they would be required to "self-quarantine for 14 days"

Boyles Law

if they did so, meaning they could not engage in in-person religious activities (including, inter alia, the Sacraments) during that time.

91.     Said another way, the vocation of priests was stopped by edict of the Defendants, in contravention of the U.S. Supreme Court's decision in *Holy Trinity Church*, 143 U.S. 457 (1892) (held: it was inconceivable that Congress had authority to pass a law restricting the employment of a priest at a local church).

92.     Despite the fact that the Stay-Home Order banned all "faith-based" and "spiritual" gatherings, it specifically includes under Section 8 as "essential businesses" such activities as:

    a.   "b. "... other healthcare facilities,[1] ... This exemption shall be construed broadly to avoid any impacts to the delivery of healthcare, broadly defined.";

    b.   "f. (ii). ... convenience stores, and other establishments engaged in the retail sale of ... liquor, beer, and wine";

    c.   "f. (v). Newspapers, television, radio, and other media services;"

    d.   "f. (viii). "... firearms businesses as provided for in Idaho Code section 46-601(3):"

    e.   "f. (xi.) Educational institutions…for purposes of…performing essential functions, provided that social distancing of six-feet per person is maintained to the greatest extent possible;" and

    f.   "f. (xxv.) Businesses that are able to operate via curbside services, drive in, drive through pick up, mailed services or delivery services."

_____

[1] Four abortion clinics continued and still continue to operate as "essential businesses." Historically in Idaho those clinics ended the lives of 25 unborn children in Idaho each week. Assuming that historical average held, then during the imposition of the Stay-Home Order alone, more Idahoans died in Idaho abortion clinics than, according to Defendants' website, have ever perished from COVID-19 (81 on the date of this filing).



93.     As demonstrated by the declaration of Rev. Jonathon Krenz, including the e-mail from Moscow Police Chief Fry attached as Attachment 1 thereto, the Stay-Home Order has been interpreted by local law enforcement as prohibiting in-person church services with any form of physical exchange, though the same is permitted to the myriad stores and restaurants that remain open. See Exhibit D, Declaration of Rev. Krenz, incorporated herein.

94.     Several other states, such as, inter alia, Arizona, Florida, and Texas, have demonstrated that less-restrictive means are available by issuing orders classifying religious services as "essential" and allowing in-person gatherings that comply with social distancing and hygiene requirements just like non-religious "essential" businesses. See true and correct copies of the Arizona, Florida, and Texas orders, attached as Exhibits E, F, and G, respectively, and incorporated herein.

95.     Those states have demonstrated that Defendants could pursue their stated objective of preventing the spread of COVID-19 without discriminating against religious gatherings and that they have less-restrictive alternatives available.

96.     Indeed, the Arizona Attorney General, in his Opinion No. 120-008 dated April 30, 2020, outlined exactly how the Defendants might pursue their stated goal without running afoul of the constitutions or statutes. (See Exhibit N, attached hereto and incorporated herein.)

97.     Nonetheless, the State of Idaho continued to threaten Plaintiffs with fines, arrest and a jail sentence, as cited above, should they exercise their rights under the U.S. and state constitutions and statutes.

98.     On information and belief, Defendants did not attempt, evaluate, or even consider less restrictive alternatives until Plaintiffs filed the original lawsuit and presented the Arizona Attorney General's aforementioned opinion to Defendants' legal counsel.

99.     Declaratory and injunctive relief are therefore needed to preserve Plaintiffs' constitutional rights, as further explained herein.

**COUNT I:**



**Violation of the Free Exercise Clause of the**

**First Amendment to the U.S. Constitution**

100.    Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

101.    Plaintiffs have the deep-seated sincerely-held religious beliefs that the Christian Bible, also known as Scripture, is the inerrant, infallible, efficacious, perspicuous, and all-sufficient Word of God.

102.    Plaintiffs Jones, Gulotta, and Remington, as pastors, have the deep-seated sincerely-held religious beliefs that they are required to personally and physically preach the Bible and administer the Sacraments of Holy Baptism and Holy Communion to their parishioners in a communal setting.

103.    Plaintiffs Herndon, Rench, Schueler, and Martin have the deep-seated sincerely-held religious belief that they are required to regularly attend church.

104.    All Plaintiffs have the deep-seated sincerely-held religious beliefs, contained in the Bible, that they should, e.g., "not neglect[] to meet together, as is the habit of some, but encourag[e] one another, and all the more as [they] see the Day drawing near." (Hebrews 10:25 ESV).

105.    The media have widely documented the fact, and Plaintiffs request the Court to take judicial notice thereof, that people in Idaho may, according to the Stay-Home Order, park next to each other in the parking lots of various stores such as Albertson's, Home Depot, Lowe's, Super 1, and Walmart, and they can follow each other up and down the aisles and queue up in check-out lines in those stores.

106.    However, according to the clear words of the Stay-Home Order, and according to the interpretation of Moscow Police Chief Fry (referenced above), they may not park in a church parking lot and exit their vehicles and follow each other into a church and queue up to receive a religious sacrament; indeed, they may not even do so in a drive-through format while remaining in their cars.

Boyles Law

107.    The Stay-Healthy Order 1 continued to impose greater restrictions on religious gatherings than on "Essential Businesses" and to impose restrictions on interstate travel for religious purposes.

108.    The Stay-Healthy Order 2 does not alter any previous decree or redefine Plaintiffs' work or exercise or religion as essential.

109.    The continued imminent threat of reverting to a prior unconstitutional stage chills the Plaintiffs' free exercise of their religion and places an increased monetary, time, and emotional burden on Plaintiffs. Plaintiffs must prepare for the inevitable second wave and the corresponding lockdown, create, prepare and implement or stand ready to implement unnecessary protocols, and remain ready to entirely alter their practices immediately upon unconstitutional decree by Defendants or risk criminal sanction. These burdens create the need for a remedy of legally cognizable interests, irreparable injuries, and ongoing harm.

110.    Thus, the Stay-Home Order and Stay-Healthy Order 1 are, both on their faces and as applied, neither neutral nor generally applicable.

111.    Rather, they both specifically and discriminatorily targets the religious beliefs, speech, assembly, and viewpoints of Plaintiffs.

112.    The Stay-Home Order, both on its face and as applied, targets Plaintiffs' free exercise of religion by prohibiting in-person gatherings and by prohibiting administration of their religious Sacraments.

113.    The Stay-Home Order, both on its face and as applied, substantially and impermissibly burdens Plaintiffs' free exercise of religion by prohibiting in-person gatherings and by prohibiting administration of their Sacraments.

114.    The Stay-Healthy Order 1, both on its face and as applied, substantially and impermissibly burdens Plaintiffs' free exercise of religion by imposing greater restrictions on in-person gatherings and administration of their Sacraments than on secular gatherings and activities.

Boyles Law

115.     Plaintiffs were forced by the Stay-Home Order to either change their deep-seated sincerely-held religious beliefs or to act in contradiction to them; they were forced to choose between the requirements of their deep-seated sincerely-held religious beliefs in Scripture and the requirements imposed by the Stay-Home Order.

116.     The Stay-Home Order, both on its face and as applied, places Plaintiffs in an irreconcilable conflict between the Stay-Home Order and their deep-seated sincerely-held religious beliefs.

117.     The Stay-Home Order and Stay-Healthy Order 1, both on their faces and as applied, placed substantial pressure on Plaintiffs to violate their deep-seated sincerely-held religious beliefs by ignoring fundamental teachings of Scripture – to wit, the regular gathering together of believers and administration of Sacraments – as they have been interpreted and applied by Christians around the world, including during times of persecution, for millennia.

118.     The Stay-Home Order and Stay-Home Order 1, both on their faces and as applied, constituted a substantial burden on Plaintiffs' deep-seated sincerely-held religious beliefs.

119.     The Stay-Home Order and Stay-Healthy Order 1, both on their faces and as applied, failed to accommodate Plaintiffs' deep-seated sincerely-held religious beliefs.

120.     The State of Idaho lacks a compelling, legitimate, or rational interest in the Stay-Home Order's and Stay-Healthy Order 1's applications of disparate standards for religious and non-religious entities and gatherings.

121.     Even if the Stay-Home Order's and Stay-Healthy Order 1's restrictions on religious gatherings were supported by a compelling state interest (which they were not), they were not the least restrictive means available to accomplish the purported state interest, as evidenced by the rejection of the alternatives recited in Exhibit D and as evidenced by the Arizona Attorney General opinion incorporated herein as Exhibit N.

122.     The Stay-Home Order and Stay-Healthy Order 1, both on their faces and as applied, specifically target Plaintiffs' deep-seated sincerely-held religious beliefs and established a system of exemptions that allows other similarly situated non-religious entities and

Boyles Law

gatherings to continue while prohibiting religious entities and gatherings, such as Plaintiffs' churches, church services, and administration of Sacraments, from operating with similar guidelines.

123.    The Stay-Home Order and Stay-Healthy Order 1, and the Stay-Healthy Order 2 with their threat of return to increased restrictions, all on their faces and as applied, have caused, are causing, and will continue to cause Plaintiffs immediate and irreparable harm, actual and undue hardship.

124.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their Constitutional rights.

125.    THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

**COUNT II:**

**Violation of the Establishment Clause of the**

**First Amendment to the U.S. Constitution**

126.    Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

127.    As documented in Exhibit D, Declaration of Rev. Krenz, the Declaration of Plaintiff Herndon, attached as Exhibit I and incorporated by reference, the Declaration of Plaintiff Jones, attached as Exhibit J and incorporated by reference, the Declaration of Plaintiff Gulotta, attached as Exhibit H and incorporated by reference, the Declaration of Plaintiff Remington, attached as Exhibit O and incorporated by reference, the Declaration of Rev. Van Noy, attached as Exhibit P and incorporated by reference, the Declaration of Plaintiff Rench, attached as Exhibit Q and incorporated by reference, the Declaration of Plaintiff Schueler, attached as Exhibit R and incorporated by reference, the Declaration of Plaintiff Martin, attached as Exhibit S and incorporated by reference, the deep-seated sincerely-held religious beliefs of many Christians, such as Plaintiffs, require both a physical gathering together and a physical administration of the Sacraments.



128.    However, as documented in Exhibit C, the only legal way, according to the Stay-Home Order, Plaintiffs may conduct church services is by live-streaming them (with a maximum of five people involved).

129.    Put another way, the Stay-Home Order promoted those religions that can be practiced online, while inhibiting and chilling those religions and religious activities that cannot be practiced online.

130.    Although live-streaming might be sufficient for some sincerely-held religious beliefs, it is not sufficient for the deep-seated sincerely-held religious beliefs of Plaintiffs.

131.    Therefore, the Stay-Home Order is an unconstitutional establishment of religion, favoring those religions that can be practiced virtually and prohibiting those religions and religious activities that cannot.

132.    The Stay-Home Order violates the Establishment Clause by prohibiting all live gatherings and explicitly promoting only online broadcast services, with no more than five people involved, thereby establishing the manner by which Christians and others will exercise their sincerely-held religious beliefs.

133.    But, the Establishment Clause prohibits the State of Idaho from either dictating or prohibiting, under penalty of legal sanctions, the manner, style, form, practices, or sacraments of religious exercise, and thereby imposing its own version of religious exercise on every church and citizen in the state.

134.    Indeed, the Stay-Home Order directly contravenes the Supreme Court's holding that, "no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or force citizens to confess by word or act their faith therein." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943).

Boyles Law

135.   By imposing a mode of worship, the Stay-Home Order imposed belief, according to the ancient theological maxim, "Lex Orandi, Lex Credendi"[2]: the law of prayer is the law of belief; otherwise said, how you worship will affect how – and therefore in whom – you believe.

136.   Defendants, through the Stay-Home Order, prescribed the only legally permitted manner of worship, and therefore what shall be orthodox versus what shall be prohibited in matters of religious worship, in direct violation of the Establishment Clause.

137.   The Stay-Home Order, both on its face and as applied, demonstrates unconstitutional hostility toward religious gatherings.

138.   The Stay-Home Order, both on its face and as applied, unconstitutionally favors certain non-religious gatherings over religious ones.

139.   The Stay-Home Order, both on its face and as applied, orders churchgoers and other people attempting to exercise their religion how and where they may and may not worship, assemble together, or otherwise exercise their religion.

140.   The Stay-Home Order, both on its face and as applied, established lawful and unlawful methods of religious practice and worship, placed limitations on how such religious practice and worship may and may not occur, and provided government approval for certain, novel forms of worship, while prohibiting the exercise of religion as it has been carried out in the world for nearly two millennia and in the United States for 400 years since William Bradford and the other Pilgrims set foot on this soil.

---

[2] The origin of this maxim is credited to the 5th-century Prosper of Aquitaine and disciple of St. Augustine of Hippo, who wrote urging the uniform administration of the Liturgy and Sacraments throughout the world: "ut legem credendi lex statuat supplicandi." He was arguing for uniform administration of the Liturgy and Sacraments "that the law of praying might establish the law of believing," to the end that the faith might therefore be "catholic" or "universal."

Boyles Law

141.    The Stay-Home Order, both on its face and as applied, violates the Establishment Clause because it excessively entangles the government with religion.

142.    The Stay-Home Order, both on its face and as applied, outright forbade, under penalty of law, all religious practice and worship that did not conform to the government-sanctioned practices.

143.    The Stay-Home Order, both on its face and as applied, outright forbade, under penalty of law, the exercise of religion as it has been practiced worldwide for nearly two millennia and in the United States for 400 years.

144.    The Stay-Home Order, both on its face and as applied, has caused, is causing, and will continue to cause Plaintiffs immediate and irreparable harm and actual and undue hardship, because of its impositions at the time it was in effect, and the threat of reimposition under the current Stay-Healthy Order 2.

145.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their Constitutional rights.

146.    THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

## COUNT III:

### Violation of Free Speech Protected under the

### First Amendment to the U.S. Constitution

147.    Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

148.    The Stay-Home Order, both on its face and as applied, is an unconstitutional prior restraint on Plaintiffs' free speech.

149.    The Stay-Home Order, both on its face and as applied, unconstitutionally discriminates on the basis of viewpoint.

150.    The Stay-Home Order, both on its face and as applied, unconstitutionally discriminates on the basis of content.

Boyles Law

151.    The State of Idaho lacks a compelling, legitimate, or rational interest in the Stay-Home Order's application of disparate standards for religious and non-religious entities and gatherings.

152.    Even if the Stay-Home Order's restrictions on religious gatherings were supported by a compelling state interest (which they are not), they are not the least restrictive means available to accomplish the purported state interest, as evidenced by the rejection of the alternatives recited in Exhibit D and as evidenced by the Arizona Attorney General opinion incorporated herein as Exhibit N.

153.    The Stay-Home Order, both on its face and as applied, fails to leave open alternative channels of communication for Plaintiffs.

154.    The Stay-Home Order, both on its face and as applied, is irrational and unreasonable and arbitrarily imposes unjustifiable and unreasonable restrictions on Plaintiffs' constitutionally protected speech.

155.    The Stay-Home Order, both on its face and as applied, impermissibly vests unfettered discretion in the hands of government officials, including Defendants and their designees, to arbitrarily apply or not apply the Stay-Home Order in a manner to restrict free speech.

156.    The Stay-Home Order, both on its face and as applied, is under-inclusive by arbitrarily limiting its prohibitions to only certain persons or entities not classified in the Stay-Home Order as "essential."

157.    The Stay-Home Order, both on its face and as applied, is unconstitutionally over-broad and chills and abridges the free speech rights of Plaintiffs.

158.    As documented in Exhibit A and described supra, the Stay-Home Order banned all "non-essential" travel and church and pastors are arbitrarily excluded from the definitions of "essential."

159.    Thus, should Plaintiffs travel anywhere for the purpose of preaching about the Christian God (other than a maximum of five for a live-stream broadcast), hearing the Word



of God, administering a religious Sacrament, or receiving a Sacrament, as are required by their sincerely-held religious beliefs, they would be violating the Stay-Home Order.

160.   In the absence of declaratory and injunctive relief, Plaintiffs will continue to be irreparably harmed because of the Stay-Home Order at the time it was in effect, and the threat of reimposition under the current Stay-Healthy Order 2, cited above.

161.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their Constitutional rights.

162.   THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

**COUNT IV:**

**Violation of the Right to Assemble Protected under the**

**First Amendment to the U.S. Constitution**

163.   Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

164.   The First Amendment prohibits the State from violating Plaintiffs' right to peaceably assemble.

165.   The Stay-Home Order, both on its face and as applied, arbitrarily prohibited Plaintiffs from peacefully assembling with their respective church congregations for the purpose of exercising their religion.

166.   There is no legitimate, rational, substantial, or compelling governmental interest in the prohibition against such assemblies.

167.   Specifically, there is no government interest in prohibiting religious gatherings with the same safeguards as are permitted to other "essential" businesses and activities.

168.   The Stay-Home Order, both on its face and as applied, arbitrarily fails to allow for less-restrictive means of meeting the stated objectives of the Stay-Home Order.

169.   The Stay-Home Order, both on its face and as applied, constitutes a violation of Plaintiffs' First Amendment rights because Plaintiffs and their fellow churchgoers are not

Boyles Law

any closer to one another than are the random customers at any of the businesses that the Stay-Home Order defines as "essential."

170.    Thus, the arbitrary prohibition against religious gatherings constitutes an as-applied violation of Plaintiffs' First Amendment right to assemble.

171.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their Constitutional rights because of the Stay-Home Order at the time it was in effect, and the threat of reimposition under the current Stay-Healthy Order 2.

172.    THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

**COUNT V:**

**Violation of Procedural and Substantive Due Process under the**

**Fifth and Fourteenth Amendments**

173.    Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

174.    The Due Process Clause of the Fifth Amendment, as applied through the Fourteenth Amendment, prohibits the State from depriving citizens of life, liberty, or property without due process of law.

175.    The right to due process of law includes the right to be free from vague or arbitrary guidelines granting officials unbridled discretion.

176.    The right to due process of law also includes the right to a hearing before a business is shut down.

177.    It would border on ludicrous for anyone to suggest that the rights herein raised – speech and assembly and establishment of religion and free exercise of religion and equal treatment under the law – are anything except fundamental to our centuries-old legal system. The Supreme Court, and history itself, have left no room for that argument.

178.    As the Supreme Court said in *Brown v. Walker*, 161 U.S. 591, 600 (1896):

As the object of the first eight amendments to the constitution was to incorporate into the fundamental law of the land certain principles of natural

Boyles Law

justice which had become permanently fixed in the jurisprudence of the mother country, the construction given to those principles by the English courts is cogent evidence of what they were designed to secure and of the limitations that should be put upon them. This is but another application of the familiar rule that, where one state adopts the laws of another, it is also presumed to adopt the known and settled construction of those laws by the courts of the state from which they are taken.

179.   And as it said the following year in *Robertson v. Baldwin*, 165 U.S. 275, 281 (1897): The law is perfectly well settled that the first 10 amendments to the constitution, commonly known as the 'Bill of Rights,' were not intended to lay down any novel principles of government, but simply to embody certain guaranties and immunities which we had inherited from our English ancestors, and which had, from time immemorial, been subject to certain well-recognized exceptions, arising from the necessities of the case.

180.   Or as the Supreme Court said in *Grosjean v. American Press Co.*, 297 U.S. 233, 243–44 (1936) (held: a state tax was unconstitutional under the due process of law clause because it abridged the freedom of the press, a 1st Amendment right): "We concluded that certain fundamental rights, safeguarded by the first eight amendments against federal action, were also safeguarded against state action by the due process of law clause of the Fourteenth Amendment, and among them the fundamental right of the accused to the aid of counsel in a criminal prosecution." Religion and assembly are also First Amendment rights.

181.   And as the Supreme Court said in *Malloy v. Hogan*, 378 U.S. 1, 10–11 (1964): "The Court thus has rejected the notion that the Fourteenth Amendment applies to the States only a watered-down, subjective version of the individual guarantees of the Bill of Rights."

182.   And in *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 784-85 (2010) (held: the 2nd Amendment applies to the States) the Court said:

Boyles Law

1
2
3
4
5
6
7

> Under our precedents, if a Bill of Rights guarantee is fundamental from an American perspective, then, unless stare decisis counsels otherwise, that guarantee is fully binding on the States and thus limits (but by no means eliminates) their ability to devise solutions to social problems that suit local needs and values. As noted by the 38 States that have appeared in this case as amici supporting petitioners, "[s]tate and local experimentation with reasonable firearms regulations will continue under the Second Amendment."

8

Brief for State of Texas et al. 23.

9
10
11

183.    And just this year the Supreme Court said in *Ramos v. Louisiana*, No. 18-5924, 2020 WL 1906545, at *6 (U.S. Apr. 20, 2020), citing *Malloy v. Hogan*: "This Court has long explained, too, that incorporated provisions of the Bill of Rights bear the same content when asserted against States as they do when asserted against the federal government."

12
13
14
15

184.    There is a self-evident constitutional problem when beer, wine, whiskey, guns, and abortions are permitted in Idaho (see Section 8 of the Stay-Home Order), but an ordinary Sunday church service, the same as has been practiced since the Pilgrims arrived here, is illegal.

16
17
18
19

185.    There is a self-evident constitutional problem when citizens may engage in interstate travel to purchase and consume beer, wine, whiskey, bread, and abortions (see paragraph 5 of the Stay-Healthy Order 1), but one of the United States purports to prohibit interstate travel for purposes of attending an ordinary Sunday church service, the same as has been practiced since the Pilgrims arrived here, because it is not "essential."

20

186.    All fundamental constitutional rights are, as a matter of law, "essential."

21
22
23

187.    The church-closure order within the Stay-Home Order violates the Due Process Clause of the Fifth and Fourteenth Amendments in that, by its express terms, it arbitrarily shuts down all church activities including Plaintiffs' church activities without any advance notice or warning, and without any hearing.

Boyles Law

188.    The church-closure order as amended by the "Additional Guidance on Statewide Stay-Home Order" (Exhibit C) violates the Due Process Clause of the Fifth and Fourteenth Amendments because, by its express terms, it arbitrarily caps church attendance at 5 people (and that only for the purpose of recording) without any explanation, and without any discussion over how Plaintiffs' particular congregations arrange themselves, whereas more than 5 people can and do distance themselves 6 feet from other customers while in businesses that are allowed to remain open.

189.    The interstate travel restriction for religious travel imposed by the Stay-Healthy Order 1 violates the Due Process Clause of the Fifth and Fourteenth Amendments in that, by its express terms, it arbitrarily shuts down all interstate church activities including Plaintiffs' church activities without any advance notice or warning, and without any hearing.

190.    The interstate travel restriction for religious travel imposed by the Stay-Healthy Order 1 violates the Due Process Clause of the Fifth and Fourteenth Amendments because, by its express terms, it arbitrarily requires mandatory 14-day self quarantine without any explanation, and without any discussion, for those engaged in interstate travel for religious purposes, while those engaged in interstate travel for an "Essential Purpose" are allowed to travel and shop freely without any quarantine.

191.    As documented in the declarations, law enforcement have told the pastors that the Stay-Home Order prohibits church gatherings with more than 5 people total.

192.    Thus, both the Stay-Home Order and the Stay-Healthy Order 1 violate the Due Process Clause of the Fifth and Fourteenth Amendments facially.

193.    Thus, both the Stay-Home Order and the Stay-Healthy Order 1 violate the Due Process Clause of the Fifth and Fourteenth Amendments as they were applied to Plaintiffs specifically.

194.    The both the Stay-Home Order and the Stay-Healthy Order 1 summarily and arbitrarily deprived Plaintiffs and all citizens in Idaho of their usual Sunday church attendance.

Boyles Law

195.    The Stay-Home Order summarily and arbitrarily deprives Plaintiffs and all citizens in Idaho of any in-person reception of any religious sacrament at all.

196.    Summarily and arbitrarily depriving citizens in Idaho of their usual Sunday church attendance and any in-person reception of any religious sacrament at all, necessarily violates Substantive Due Process, for it is a denial of several protected constitutional rights: religion, speech, assembly, and Equal Protection.

197.    Summarily and arbitrarily quarantining citizens is also a violation of Due Process.

198.    Further, Defendants have not shown a compelling reason for these violations of constitutional rights, nor can they.

199.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their Constitutional rights, especially considering the threat of arbitrary and capricious reimposition of these restrictions at any time at the whim of Defendants, according to the express provision of the Stay-Healthy Order 2, cited above.

200.    THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

## COUNT VI:

## Violation of Equal Protection under the Fourteenth Amendment

201.    Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

202.    The Stay-Home Order and Stay-Healthy Order 1, both on their faces and as applied, are an unconstitutional abridgment of Plaintiffs' right to equal protection under the law, is not neutral, and specifically targets religious gatherings for unequal treatment.

203.    Under the Stay-Home Order, Plaintiffs and their parishioners may legally drive to McDonald's, talk to the McDonald's employee through the open car window, hand that employee money, receive change back from the hand of that employee, and receive food and drinks through the car window from another employee's hands.

204.    Under the Stay-Healthy Order 1, Plaintiffs and their parishioners may legally drive between Idaho and another state in order to go to McDonald's, talk to the McDonald's

Boyles Law

employee through the open car window, hand that employee money, receive change back from the hand of that employee, and receive food and drinks through the car window from another employee's hands.

205.    But, as documented in Exhibit D, Declaration of Rev. Krenz, these same Plaintiffs and parishioners may not legally drive to any parking lot or any driveway, stop their cars, talk to Plaintiffs Jones, Gulotta, or Remington, or any clergy, through their open car windows, and receive food and drink (the Sacrament of the Lord's Supper) from the hand of Plaintiffs Jones, Gulotta, or Remington, or any clergy, through that car window without violating the Stay-Home Order.

206.    Similarly, under the Stay-Healthy Order 1, these same Plaintiffs and Parishioners may not engage in interstate travel for the purpose of attending church or receiving the Sacraments, or for any other religious purpose, without being subject to mandatory 14-day self quarantine.

207.    That disparity is a targeted discrimination against the practice of religion.

208.    The Stay-Home Order and Stay-Healthy Order 1, both on their faces and as applied, violate the Equal Protection Clause by arbitrarily treating Plaintiffs differently from other similarly situated non-religious persons on the basis of the content and viewpoint of their gatherings and speech.

209.    There is no compelling state reason, or legitimate purpose, in allowing citizens to interact with other people in a drive-through food line and when receiving deliveries at their front door, but not when attending church services in their car.

210.    More specifically, there is no compelling state reason or legitimate purpose in allowing citizens to interact with other people in a drive-through food line, or when receiving deliveries at their front door, but not with Plaintiffs Jones, Gulotta, or Remington, or another pastor, in the context of receiving religious sacraments.

Boyles Law

211.    The State does not have a compelling reason for shutting down live church services while keeping other live businesses open where there is similar public exposure, nor has the State selected the least restrictive means to further any purported interest.

212.    The State does not have a compelling reason for prohibiting interstate travel for religious purposes while allowing it for other live businesses where there is similar public exposure, nor has the State selected the least restrictive means to further any purported interest.

213.    That is, the disparity mentioned above demonstrates that the government action has no rational relationship with the stated purpose of curtailing the spread of COVID-19; if it did, then drive-through food service and home delivery of food, as well as interstate travel for drive-through food service, would also be forbidden.

214.    The Stay-Home Order, both on its face and as applied, unconstitutionally discriminates between religious and non-religious gatherings and purposes.

215.    Further, by expressly allowing churches to operate via live-streaming while forbidding churches from any in-person gatherings or administration of the Sacraments, the State has overtly favored religious beliefs that can be exercised virtually.

216.    The State does not have a compelling, legitimate, or rational reason or purpose for this favoritism of some religions over others.

217.    Neither has the State selected the least restrictive means to further any purported legitimate government interest.

218.    The Stay-Home Order and Stay-Healthy Order 1, both on their faces and as applied, are arbitrary and lack a rational basis.

219.    The Stay-Home Order and Stay-Healthy Order 1, both on their faces and as applied, are arbitrary, irrational, and unjustifiable and impose arbitrary, irrational, and unjustifiable restrictions on Plaintiffs' religious gatherings.

220.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their Constitutional rights, especially considering the threat of arbitrary and capricious

Boyles Law

1  reimposition of these restrictions at any time at the whim of Defendants, according to the

2  express provision of the Stay-Healthy Order 2, cited above.

3  221.  THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in

   their prayer for relief, infra.

4

                                  **COUNT VII:**

5                      **Idaho Religious Freedom Act (I.C. 73-402)**

6  222.  Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

7  223.  Plaintiffs incorporate by reference all paragraphs in Counts I through VI, supra.

8  224.  Idaho Code § 73-402, also known as the Religious Freedom Restoration Act (RFRA),

9  begins with these words: "Free exercise of religion is a fundamental right that applies in this

   state, even if laws, rules or other government actions are facially neutral."

10 225.  If free exercise of religion is a fundamental right, then it is, by definition, "essential."

11 226.  That statute further provides as a general matter that state government "shall not

12 substantially burden a person's exercise of religion even if the burden results from a rule of

13 general applicability."

14 227.  For the reasons expressed above, the Stay-Home Order and Stay-Healthy Order 1,

15 which purport to be rules of general applicability for the entire State of Idaho, arbitrarily

   imposed upon Plaintiffs a substantial burden on the exercise of religion.

16

17 228.  RFRA provides that the state government can "substantially burden a person's

   exercise of religion only if it demonstrates that application of the burden to the person is

18 both: (a) Essential to further a compelling governmental interest; (b) The least restrictive

19 means of furthering that compelling governmental interest."

20 229.  As explained above, the outright closure of live church is not essential to further a

21 state government interest; e.g., there is no material difference between drive-through food

   service or home-delivery of pizza on the one side, and, for instance, the several proposals

22 that Rev. Krenz proposed to Police Chief Fry, as described in the former's Declaration,

23 Exhibit D.

230.    For the same reasons, the outright closure of live church is not the least restrictive means of furthering the government's stated interest.

231.    As explained above, an imposition of mandatory self-quarantine for interstate travel for religious purposes, while permitting unfettered interstate travel for an "Essential Purpose" such as the McDonald's drive-through, supermarket, or visiting an abortion clinic to terminate the life of one's unborn child, is not essential to further a state government interest.

232.    For the same reasons, said interstate travel restriction is not the least restrictive means of furthering the government's stated interest.

233.    Thus, Plaintiffs have and are suffering a violation of their state religious freedom.

234.    In the absence of declaratory and injunctive relief, Plaintiffs will continue to be irreparably harmed, especially considering the threat of arbitrary and capricious reimposition of these restrictions at any time at the whim of Defendants, according to the express provision of the Stay-Healthy Order 2, cited above.

235.    THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra, and award Plaintiffs mandatory attorneys' fees pursuant to I.C. § 73-402(4).

## COUNT VIII:

## Idaho Constitution Art. 1 Sec. 1 Freedom

236.    Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

237.    Plaintiffs incorporate by reference all paragraphs in Counts I through VI, supra.

238.    The Idaho Constitution provides that, "All men are by nature free and equal, and have certain inalienable rights, among which are enjoying and defending life and liberty; acquiring, possessing and protecting property; pursuing happiness and securing safety."

239.    Further, Defendants have not shown a compelling reason for these violations of constitutional rights, nor can they.

Boyles Law

240.     In the absence of declaratory and injunctive relief, Plaintiffs will continue to be irreparably harmed, especially considering the threat of arbitrary and capricious reimposition of these restrictions at any time at the whim of Defendants, according to the express provision of the Stay-Healthy Order 2, cited above.

241.     THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

## COUNT IX:

### Idaho Constitution Art. 1 Sec. 4 Religious Liberty

242.     Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

243.     Plaintiffs incorporate by reference all paragraphs in Counts I through VI, supra.

244.     The Idaho Constitution provides that, "The exercise and enjoyment of religious faith and worship shall forever be guaranteed."

245.     In the absence of declaratory and injunctive relief, Plaintiffs will continue to be irreparably harmed, especially considering the threat of arbitrary and capricious reimposition of these restrictions at any time at the whim of Defendants, according to the express provision of the Stay-Healthy Order 2, cited above.

246.     THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

## COUNT X:

### Idaho Constitution Art. 1 Sec. 9 Free Speech

247.     Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

248.     Plaintiffs incorporate by reference all paragraphs in Counts I through VI, supra.

249.     The Idaho Constitution provides that every person may freely speak on all subjects.

250.     In the absence of declaratory and injunctive relief, Plaintiffs will continue to be irreparably harmed, especially considering the threat of arbitrary and capricious reimposition of these restrictions at any time at the whim of Defendants, according to the express provision of the Stay-Healthy Order 2, cited above.

Boyles Law

251.     THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

## COUNT XI:

### Idaho Constitution Art. 1 Sec. 10 Right of Assembly

252.     Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

253.     Plaintiffs incorporate by reference all paragraphs in Counts I through VI, supra.

254.     The Idaho Constitution provides that the people of Idaho shall have the right to assemble in a peaceable manner.

255.     In the absence of declaratory and injunctive relief, Plaintiffs will continue to be irreparably harmed, especially considering the threat of arbitrary and capricious reimposition of these restrictions at any time at the whim of Defendants, according to the express provision of the Stay-Healthy Order 2, cited above.

256.     THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

## COUNT XII:

### Idaho Constitution Art. 21 Sec. 19 Religious Freedom Guaranteed

257.     Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

258.     Plaintiffs incorporate by reference all paragraphs in Counts I through VI, supra.

259.     The Idaho Constitution provides that "perfect toleration of religious sentiment shall be secured."

260.     In the absence of declaratory and injunctive relief, Plaintiffs will continue to be irreparably harmed, especially considering the threat of arbitrary and capricious reimposition of these restrictions at any time at the whim of Defendants, according to the express provision of the Stay-Healthy Order 2, cited above.

## COUNT XIII:

### Religious Land Use and Institutionalized Persons Act

### 42 U.S.C. §§ 2000cc-2000cc-5

Boyles Law

261.   Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

262.   Plaintiffs incorporate by reference all paragraphs in Counts I through VI and XII, supra.

263.   Under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. §§ 2000cc-2000cc-5 (RLUIPA), "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution." 42 U.S.C. § 2000cc(a)(1).

264.   To justify religious restrictions, the State must demonstrate that the burden it imposes is supported by a compelling state interest and is the least restrictive means to further that alleged state interest.

265.   The RLUIPA also prohibits the State from "impos[ing] or implement[ing] a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1).

266.   The RLUIPA further prohibits the State from "impos[ing] or implement[ing] a land use regulation that (A) totally excludes religious assemblies from a jurisdiction; or (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(3).

267.   The Stay-Home Order, both on its face and as applied, arbitrarily precluded Plaintiffs' exercise of their sincerely-held religious beliefs by prohibiting religious gatherings; in other words, Plaintiffs' use of their church lands is substantially burdened.

268.   Plaintiffs are forced by the Stay-Home Order to either change their deep-seated sincerely-held religious beliefs or to act in contradiction to them; they were forced to choose between the requirements of their deep-seated sincerely-held religious beliefs in Scripture and the requirements imposed by the Stay-Home Order.

269.   The Stay-Home Order, both on its face and as applied, constitutes a substantial burden on Plaintiffs' sincerely-held religious beliefs.

Boyles Law

270.    The State of Idaho lacks a compelling, legitimate, or rational interest in the Stay-Home Order's application of disparate standards for religious and non-religious entities and gatherings.

271.    Even if the Stay-Home Order's restrictions on religious gatherings were supported by a compelling state interest (they are not), they are not the least restrictive means available to accomplish the purported state interest, as evidenced by the rejection of the alternatives recited in Exhibit D and as evidenced by the approach taken by the State of Arizona as documented in Exhibit N.

272.    The Stay-Home Order, both on its face and as applied, has caused, is causing, and will continue to cause Plaintiffs immediate and irreparable harm and actual and undue hardship.

273.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their Constitutional rights, especially considering the threat of arbitrary and capricious reimposition of these restrictions at any time at the whim of Defendants, according to the express provision of the Stay-Healthy Order 2, cited above.

274.    THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.

**COUNT XIV:**

**Violation of the Right to Travel under the Fourteenth Amendment**

275.    Plaintiffs incorporate by reference all paragraphs in Sections I through IV, supra.

276.    Plaintiffs incorporate by reference all paragraphs in Counts I through VI, supra.

277.    Under Paragraph 7(b) of the Stay-Home Order (Exhibit A) and Paragraph 5 of the Stay-Healthy Order 1 (Exhibit K), Plaintiffs may travel to Montana to purchase bread and wine at an Albertson's grocery store but they may not travel to Montana to attend church and receive bread and wine via Holy Communion.

278.    Under Paragraph 7(b) of the Stay-Home Order (Exhibit A) and Paragraph 5 of the Stay-Healthy Order 1 (Exhibit K), United States citizens residing in Washington State may

Boyles Law

travel to Idaho to purchase bread and wine at a Yolk's Market, but may not then attend Plaintiff Jones', Gulotta's, or Remington's, or any other pastor's, churches.

279.    Paragraph 7(b)(i) of the Stay-Home Order reads:

280.    (i). Persons entering the state of Idaho are required to self-quarantine for 14 days. If an individual will be present in Idaho for fewer than 14 days, that individual must self-quarantine for the duration of their visit. For purposes of clarity, this directive does not apply to persons performing an Essential Purpose or persons who as part of their normal life live in one state and work or gain Essential Services in another state.

281.    Religious actives are not "Essential Purposes" as defined by paragraph 7(b)(ii) of the Stay-Home Order.

282.    Paragraph 5(a) of the Stay-Healthy Order 1 stated that, "Persons entering the state of Idaho are required to self-quarantine for 14 days … [or] for the duration of their visit," unless the travel was for an "Essential Purpose."

283.    Religious actives are not "Essential Purposes" as defined by paragraph 5(b) of the Stay-Healthy Order 1.

284.    Thus, the Stay-Home Order and the Stay-Healthy Order 1, both on their faces and as applied, are an unconstitutional abridgment of Plaintiffs' right to travel (equal protection).

285.    The Stay-Home Order and the Stay-Healthy Order 1, both on their faces and as applied, also specifically target religious gatherings, purposes, and activities for unequal treatment.

286.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their Constitutional rights, especially considering the threat of arbitrary and capricious reimposition of these restrictions at any time at the whim of Defendants, according to the express provision of the Stay-Healthy Order 2, cited above.

287.    THEREFORE, Plaintiffs respectfully pray for relief against Defendants as set forth in their prayer for relief, infra.



## V.   <u>PRAYER FOR RELIEF</u>

Wherefore, Plaintiffs respectfully request relief as follows:

A.  That the court hear this case, in recognition of Plaintiffs' First Amendment right to redress of grievances. See, e.g., the opening paragraph of *U.S. v. Hylton*, 710 F.2d 1106, 1108 (5th Cir. 1983), referring to the criminal complaint Hylton filed against IRS agents who ignored her "no trespassing" signs and trespassed on her private property in the course of their investigation of her son: "Since we conclude that Jean Hylton's actions <u>represented an exercise of the right to petition for a redress of grievances in its pristine form,</u> we affirm the district court's judgment absolving her from criminal sanction <u>for the exercise of her constitutional right.</u>" (emphasis added)

B.  That the Court issue a Temporary Restraining Order restraining and enjoining Defendants, all State officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, attempting to enforce, threatening to enforce, or otherwise requiring compliance with the Stay-Home Order, the Stay-Healthy Order 1, the Stay-Healthy Order 2, or any other similar order, to the extent any such order prohibits religious worship services at any church or place of religious worship in Idaho, including in-person church services at any such place of worship, or to prohibit interstate, or intrastate, travel for religious purposes.

C.  That the Court enter a permanent Order declaring that Defendants have, by issuance and proclamation of the Stay-Home Order and the Stay-Healthy Order 1, unlawfully burdened Plaintiffs' rights as claimed herein.

D.  That the Court permanently enjoin Defendants from prohibiting Plaintiffs from physically gathering for religious purposes, including, without limitation, administration of Sacraments, or from traveling, whether interstate or intrastate, for religious purposes.

E.  That the Court retain jurisdiction over the matter for the purposes of enforcing the Court's order.

Boyles Law

1    F.   That the Court declare Plaintiffs as prevailing parties and award them the reasonable

2    costs and expenses of this action, including reasonable attorney fees, in accordance with

3    42 U.S.C. § 1988 and I.C. § 73-402(4).

4    G.   That the Court declare Plaintiffs have already prevailed respecting the changes made

     to the Stay-Healthy Order 2 as compared to the Stay-Healthy Order 1 and issue an

5    interim award of attorney fees and costs up to and including May 13, 2020, in accordance

6    with 42 U.S.C. § 1988 and I.C. § 73-402(4).

7    H.   That the Court grant such other and further relief as the Court deems equitable and

8    just under the circumstances.

9                                    Respectfully submitted this 27th day of May, 2020

                          By:     BOYLES LAW, PLLC
10
                                  /s/  D. Colton Boyles
11                                D. Colton Boyles, ISB# 10282
                                  BOYLES LAW, PLLC
12                                PO Box 1242
                                  319 Church Street
13                                Sandpoint, Idaho 83864
                                  Phone: (575) 808-9137
14                                Colton@CBoylesLaw.com

15                                Nathaniel K. MacPherson*
                                  Bradley Scott MacPherson*
16                                The MacPherson Group, LLC
                                  24654 North Lake Pleasant Parkway
17                                Suite 103-551
                                  Peoria, AZ 85383-1359
18                                Phone: (623) 209 - 2003
                                  nathan@beatirs.com
19                                scott@beatirs.com

20                                Attorneys for Plaintiff

21                                *Pro hac vice application pending

22

23

AMENDED COMPLAINT - 40                                          Boyles Law

# VERIFICATION

I certify under penalty of perjury pursuant to Idaho Code § 9-1406 and 28 U.S.C. § 1746 that the foregoing Verified Complaint has been examined by me and that the factual allegations therein are true to the best of my information, knowledge, and belief.

Dated: May 27, 2020

SCOTT HERNDON                                    REV. JOSH JOINES

REV. MICHAEL GULOTTA                             REV. TIM REMINGTON

GABRIEL RENCH                                    CHRIS SCHUELER

DON MARTIN

## VERIFICATION

I certify under penalty of perjury pursuant to Idaho Code § 9-1406 and 28 U.S.C. § 1746 that the foregoing Verified Complaint has been examined by me and that the factual allegations therein are true to the best of my information, knowledge, and belief.

Dated: May 27, 2020

SCOTT HERNDON

REV. JOSH JOINES

REV. MICHAEL GULOTTA

REV. TIM REMINGTON

GABRIEL RENCH

CHRIS SCHUELER

DON MARTIN

**VERIFICATION**

I certify under penalty of perjury pursuant to Idaho Code § 9-1406 and 28 U.S.C. § 1746 that the foregoing Verified Complaint has been examined by me and that the factual allegations therein are true to the best of my information, knowledge, and belief.

Dated: May 27, 2020

SCOTT HERNDON                    REV. JOSH JOINES


REV. MICHAEL GULOTTA              REV. TIM REMINGTON

*Michael Gulotta*


GABRIEL RENCH                    CHRIS SCHUELER



DON MARTIN

**VERIFICATION**

I certify under penalty of perjury pursuant to Idaho Code § 9-1406 and 28 U.S.C. § 1746 that the foregoing Verified Complaint has been examined by me and that the factual allegations therein are true to the best of my information, knowledge, and belief.

Dated: May 27, 2020

SCOTT HERNDON                              REV. JOSH JOINES

REV. MICHAEL GULOTTA                       REV. TIM REMINGTON

GABRIEL RENCH                              CHRIS SCHUELER

DON MARTIN

# VERIFICATION

I certify under penalty of perjury pursuant to Idaho Code § 9-1406 and 28 U.S.C. § 1746 that the foregoing Verified Complaint has been examined by me and that the factual allegations therein are true to the best of my information, knowledge, and belief.

Dated: May 27, 2020

SCOTT HERNDON                    REV. JOSH JOINES

REV. MICHAEL GULOTTA              REV. TIM REMINGTON

Pastor Tim D Remington

GABRIEL RENCH                     CHRIS SCHUELER

DON MARTIN