UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SCOTT HERNDON, et al.,<br><br>    Plaintiffs,<br>v.<br><br>GOVERNOR BRAD LITTLE, in his official capacity; and DAVE JEPPESEN, in his official capacity as Director of the Idaho Department of Health and Welfare,<br><br>    Defendants. | Case No. 1:20-cv-00205-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

People and governmental authorities throughout the country have spent much of the year 2020 dealing with the novel COVID-19 virus. Idaho is no different. At its core, this case involves Idaho's public-health orders addressing the COVID-19 pandemic and the well-cherished values of religious freedom. However, the Court does not delve into this case's substantive issues because it lacks jurisdiction as Plaintiffs' claims are moot.

The matter before the Court is Defendants Governor Brad Little ("Governor") and Director Dave Jeppesen's ("Director") Motion to Dismiss. Dkt. 18. Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the

Court will decide the motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon review, and for the reasons set forth below, the Court GRANTS the motion.

## II. BACKGROUND

Before Plaintiffs filed their original Complaint in this case—and throughout the duration of this case—the Governor has issued various orders to combat the COVID-19 pandemic in Idaho with the assistance of the Director. In Plaintiffs words, they filed this lawsuit "to stop Governor Little and Director Jeppesen from violating their rights under the First, Fifth, and Fourteenth Amendments of the United States Constitution, the Religious Land Use and Institutionalized Persons Act, Articles 1 and 21 of the Idaho Constitution, and the Idaho Religious Freedom Restoration Act." Dkt. 8, at 2.[1] Specifically, Plaintiffs assert fourteen causes of action based on purported violations of the following provisions of law:

1. the Free Exercise Clause of the First Amendment;
2. the Establishment Clause of the First Amendment;
3. the Freedom of Speech Clause of the First Amendment;
4. the right to peaceably assemble under the First Amendment;
5. procedural and substantive due process under the Fifth and Fourteenth Amendments;
6. the Equal Protection Clause of the Fourteenth Amendment;
7. Idaho Code § 73-402—the Idaho Religious Freedom Act;
8. the right to freedom generally under Article I, Section 1, of the Idaho Constitution;
9. the right to religious liberty under Article I, Section 4, of the Idaho Constitution;
10. the right to free speech under Article I, Section 9, of the Idaho Constitution;
11. the right of assembly under Article I, Section 10, of the Idaho Constitution;
12. the right to religious freedom under Article XXI, Section 19, of the Idaho Constitution;

---

[1] All references to Plaintiffs' allegations come from the Amended Complaint since it is the operative pleading as a matter of law. *See* Fed. R. Civ. P. 15(a)(1)(B); *Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015); *see also Barnes v. Dist. of Columbia,* 42 F. Supp. 3d 111, 117 (D.D.C. 2014) ("When a plaintiff files an amended complaint as of right . . . the amended complaint becomes the operative pleading . . . and any pending motion to dismiss becomes moot." (citations omitted)).

13. 42 U.S.C. §§ 2000cc to 2000cc-5—the Religious Land Use and Institutionalized Persons Act; and
14. the right to travel under the Fourteenth Amendment.

*See generally id.*

Many of Plaintiffs' allegations relate to the restrictions imposed by the initial Stay Home or Self-Isolate Order and Stay-Healthy Orders 1 and 2, which are no longer in effect. However, Plaintiffs also allege numerous times throughout their Amended Complaint that the threat of "reimposition of those restrictions at any time" continues to harm them. *E.g.*, *id.* at 9, 22, 24–25, 29, 33–35, 37, 38. Plaintiffs maintain that the Governor and Director's orders "ha[ve] caused, [are] causing, and will continue to cause Plaintiffs immediate and irreparable harm and actual and undue hardship." *Id.* at 37. They seek a declaratory judgment, a temporary restraining order, a permanent injunction, and fees by way of their Amended Complaint. *Id.* at 39–40. To date, Plaintiffs have not filed any motion for these forms of relief. Rather, they have relied solely on their Amended Complaint.

A summary of the public-health orders will further frame the issues in this case. The Director first issued a statewide Stay Home Order on March 25, 2020.[2] This first order mandated that people self-isolate at their place of residence, unless leaving for an "essential" service or activity. The order also restricted all non-essential travel. Of note, religious gatherings and interstate travel for religious purposes were not among the list of

---

[2] All the orders are publicly available records accessible online at https://coronavirus.idaho.gov/governors-actions/. The orders discussed invoked various provisions of law as a basis for their support. *See* Idaho Const. Art. IV, § 5; Idaho Code §§ 46-601; 46-1008; 56-1003(7).

MEMORANDUM DECISION AND ORDER - 3

approved "essential" activities. In fact, those activities were expressly prohibited. Dkt. 10-1, at 4.

Two days later, the Governor explained that clergy and church members could produce, record, and stream church services with their organizations. He also later clarified that drive-in church services were approved as well. This initial order was amended twice, once on April 2 and again on April 15. The April 15 version of the order was set to continue "in effect until 11:59 p.m. on April 30, 2020 or until it is extended, rescinded, superseded or amended in writing by the Director." Dkt. 18-1, at 3. While the Director made other changes to the order, they are immaterial to the allegations in the present lawsuit.

On April 23, in anticipation of the last amended order's expiration, the Director issued Idaho's "Guidelines for Opening Up Idaho." These guidelines provided a data-driven plan for removing a majority of the restrictions in four incremental stages numbered 1 through 4, from most restrictive to least restrictive, respectively. Each stage was projected to last two weeks, beginning on May 1.

The Governor and Director have since issued five versions of their Stay Healthy Order in adherence with the guidelines' numerical analytics. On May 1, the Director issued Idaho's Stay Healthy Order 1. In pertinent part, the order cautioned individuals to avoid gatherings, but it removed the actual gathering restrictions. It explicitly allowed in-person religious services while maintaining appropriate physical distancing and sanitation. The order also imposed a fourteen-day self-quarantine mandate for individuals entering the state of Idaho. That same day, Plaintiffs filed their original Complaint. Dkt. 5.

Two weeks later, on May 16, Idaho's Stay Healthy Order 2 took effect. The only change noteworthy to this case was that the fourteen-day self-quarantine mandate was lifted. Certain travel was discouraged, but no travel was deemed unlawful. Thereafter, on May 27, Plaintiffs filed their Amended Complaint. Dkt. 8. On May 28, the Director issued Idaho's Stay Healthy Order 3. The order took effect on May 30. The main change with this order was increasing the *guideline* limit, not mandate, of people encouraged in gatherings from ten to fifty.

On June 11, the Director issued Idaho's Stay Healthy Guidelines for phase four, which took effect on June 13. Pursuant to this order, no gathering or traveling restrictions or discouragement were in place, and things were closest to the pre-COVID-19 world we used to inhabit. While some relatively minor restrictions still applied, none were material to this case.

On June 24, the Governor and Director filed the instant Motion to Dismiss for lack of jurisdiction. Dkt. 18. In their motion, they argue that Plaintiffs lacked standing at the time they filed their Complaint and Amended Complaint and that the claims are moot, among other things. *Id.* Despite the foregoing changes in the previously imposed religious and travel restrictions, i.e., removal of the complained of restrictions, Plaintiffs opposed the standing and mootness arguments in their Response. Dkts. 19, 20. The Governor and Director filed a Reply. Dkt. 22.

In the time since the briefing for this matter took place, Idaho's restrictions have changed twice. On October 27, the Stay Healthy Order 4 was issued, taking Idaho back to Stage 3. The justifications for this change were that roughly 60,000 Idahoans had been

MEMORANDUM DECISION AND ORDER - 5

infected with COVID-19 and 573 had unfortunately died from the virus. The order also quoted a report from the White House Coronavirus Task Force on Idaho's high rates, which included being seventh in the nation for cases per capita and second in the nation for test positivity percentages at 10.1%. The order restricted gatherings to fifty or fewer people, but exempted gatherings for religious activities. It did not prohibit interstate travel in any way.

Most recently, on November 14, the Stay Healthy Order 5 was issued, returning Idaho to a "modified" stage 2. This order is in effect at the present time. Gatherings have been limited to ten people or fewer. Additionally, people at increased risk have been "strongly encouraged to stay home and limit their movement outside of their place of residence," but no other travel restrictions were imposed, intrastate or interstate. Idaho Official Resources for the Novel Coronavirus (COVID-19), https://coronavirus.idaho.gov/wp-content/uploads/2020/11/stage-2-modified-order.pdf. Again, the order provided its own justifications, which included statistics that approximately 78,000 Idahoans had tested positive for COVID-19 and 749 had died from the virus. The per capita rate was then twelfth in the nation, and the positive test percentages remained the second highest in the nation. Further, the order provided statistics showing that Idaho's hospitals were at or nearing capacity, stating that "[b]etween Oct 31 [and] Nov 6, on average, 44 patients with confirmed COVID-19 and 7 patients with suspected COVID-19 were reported as newly admitted each day to hospitals in Idaho." *Id.* Nonetheless, once more, the order exempted religious activities from the gathering

limitations.³ The absence of these types of restrictions is crucial to the Court's analysis today.

### III. LEGAL STANDARD

A federal court's jurisdiction is limited to cases or controversies. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). "Under Article III of the Constitution, a live controversy [must] persist throughout all stages of the litigation" or else the case must be deemed moot and dismissed. *All. for the Wild Rockies v. Savage*, 897 F.3d 1025, 1031 (9th Cir. 2018) (cleaned up). "A case that becomes moot at any point during the proceedings is no longer a 'Case' or 'Controversy' for purposes of Article III, and is outside the jurisdiction of the federal courts." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018) (cleaned up). "Mootness has been described as standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Bishop Paiute Tribe v. Inyo Cty.*, 863 F.3d 1144, 1155 (9th Cir. 2017) (cleaned up). The basic question is whether there exists a present controversy as to which effective relief can be granted. *Vill. of Gambell v. Babbitt*, 999 F.2d 403, 406 (9th Cir. 1993). A motion to dismiss based on non-justiciability is brought under Federal Rule of Civil Procedure 12(b)(1). *See May v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

---

³ To be sure, these public-health orders have routinely required religious organizations to adhere to physical distancing and sanitation requirements, but Plaintiffs do not challenge these requirements as unlawful in any way. Instead, their lawsuit focuses on gathering and travel restrictions in the prior orders, and the possibility that those restrictions will be reimposed. *See generally* Dkts. 8, 20.

MEMORANDUM DECISION AND ORDER - 7

## IV. DISCUSSION

As much as the Court would relish the opportunity to address issues of religious freedom, free speech, assembly, travel, and the other matters presented in this case, the Court is constrained from doing so by the doctrine of mootness. Indeed, the restrictions of which Plaintiffs complain—prohibiting religious gatherings and interstate travel—have been rescinded since before they filed both their Amended Complaint and Response. To date, there are no restrictions on these activities in Idaho.

Hence Plaintiffs' only allegations that are worth discussing are those regarding whether the restrictions are likely to be reimposed. After all, Plaintiffs even admit that "Defendants amended their order to remove the alleged violations with the 'Stay-Healthy Order 2[.]'" Dkt. 20, at 10 (footnote omitted). And, as noted, all the complained-of restrictions have been absent from all the subsequent Stay Healthy Orders. Plaintiffs nonetheless focus on the language that each order will "be in effect until it is extended, rescinded, superseded, or amended" in the orders and on Idaho's COVID-19 website. *E.g.*, Dkt. 20, at 8. Based on this language, Plaintiffs argue that this case is not moot and that they are experiencing continuing harm due to threat of future unlawful restrictions. But the record belies this conclusion, and Plaintiffs' arguments are unpersuasive.

To begin, speculative contingencies are insufficient to sustain an otherwise moot controversy. *See Dufresne v. Veneman*, 114 F.3d 952, 955 (9th Cir. 1997) (per curiam) (holding that where claims for injunctive relief against aerial pesticide spraying were mooted by eradication of insect and likely use of other means to fight future infestation, the possibility of future spraying was insufficient to sustain controversy); *Mayfield v.*

*Dalton*, 109 F.3d 1423, 1425 (9th Cir. 1997) (holding that where members of military had challenged constitutionality of military program to collect and store tissue samples, case became moot upon members' separation from military because, although they might be required to return to active duty in an emergency, such a "speculative contingency" was insufficient to sustain controversy). "Where there is nothing left of a challenged law to enjoin or declare illegal, further judicial action would necessarily be advisory and in violation of the limitations of Article III." *Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 949 (9th Cir. 2019).

Speculation is precisely what is involved here, and in fact, the claim that the restriction will be reimposed is compellingly contradicted by the Governor and Director's response to the virus over the past half year. As stated, despite the ongoing pandemic, the restrictions Plaintiffs fear will be reimposed have not been in place since at the latest mid-May for travel and early-May for religious gatherings. Even in the most recent two Stay Healthy Orders issued, the Governor and Director have exempted religious gatherings despite greatly re-restricting other activities and despite the significant uptick in probable COVID-19-related cases and deaths in Idaho. *See Spell v. Edwards*, 962 F.3d 175, 177 (5th Cir. 2020) (holding that a pastor's request for an injunction against orders restricting in-person church services was moot because "there [was] nothing to enjoin" since "[t]he challenged orders expired more than a month" prior).

Put differently, while the situation has become more severe and restrictions have become more stringent for most activities in recent months in Idaho, the asserted rights at

issue in *this case* have not been inhibited in any way.[4] This indicates that such restrictions are unlikely even in the situation of worsening coronavirus conditions. Thus, the circumstances in this case show that the Governor and Director are not reasonably likely to revert to significantly restricting religious worship and travel in the imminent future. *See City of L.A. v. Lyons*, 461 U.S. 95, 102 (1983) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." (cleaned up)); *Am. Diabetes Ass'n v. United States Dep't of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019) (holding defendants satisfied their burden of clearly showing they cannot reasonably be expected to reinstitute the Old Policy's blanket ban, and thus the association's challenge to that policy, as well as the injuries incurred thereunder, were moot); *Outdoor Media Grp. v. City of Beaumont*, 506 F.3d 895, 901 (9th Cir. 2007) (holding claims for injunctive and declaratory relief moot where "the constitutional deficiencies . . . alleged in connection with the original sign ordinance" had been cured).

Moreover, in discussing health authorities who suggest that several states should be under stay-home orders, Plaintiffs ask, "[W]ill Idaho likewise follow the report's recommendation and again close churches?" Dkt. 20, at 9. Plaintiffs' point is, in essence, that nobody knows the answer. However, this question unwittingly highlights why this case

---

[4] Plaintiffs also discuss heavy-handed restrictions in other states, such as California, Dkt. 20, at 8, but Idaho's response has been demonstrably different than California's and other states'. *See Harvest Rock Church v. Newsom*, No. 20A94, 2020 WL 7061630 (Dec. 3, 2020) (ordering the Ninth Circuit to remand the denial of relief to the district court "for further consideration in light of" the Court's most recent religious freedom and coronavirus restrictions case). How other states are dealing with the pandemic is wholly inapposite to whether these Defendants have violated these Plaintiffs' rights in this state.

is moot. Of course, nobody knows what the future will bring, particularly with the COVID-19 pandemic; but, under the circumstances and given the details of Idaho's Stay Healthy Orders, it appears reasonably likely that the restrictions will not be reimposed at a future time. To be sure, as will be discussed below, *were* the Governor or Director to reimpose such restrictions, Plaintiffs would be within their rights to quickly file another suit.

Next, the language in the orders Plaintiffs take issue with has been included in all the orders and merely states the obvious: the orders can be changed. It clearly does not predict what will be done because the complained-of restrictions have not been reimposed. This wording purportedly allowing the Director to amend, rescind, or reimpose other orders based on changing circumstances is no different than had the words not been included. On the one hand, having these words in the various orders does not allow the Director to impose unconstitutional measures—which this Court could quickly enjoin if asked to do so in an expedited motion.[5] And, on the other hand, not having the words would not limit the state from imposing new restrictions or new orders in line with its lawful police powers under appropriate circumstances. Put differently, the words have no legal effect. They loom no larger than the minute prospect of the state imposing unconstitutional restrictions in the future had they not been included. In short, the Court views such wording as boilerplate language and not a basis for the matter to remain a live case or controversy.

---

[5] In this case, Plaintiffs relied solely on their Amended Complaint and did not file an emergency motion for an injunction or temporary restraining order of any kind. The Court is not disparaging Plaintiffs' litigation tactics in this case; however, it must note that the timing of Plaintiffs' Complaint and Amended Complaint is the reason the Court is where it is today. Had Plaintiffs invoked more time-sensitive tactics, such as a motion for a temporary restraining order, the Court likely could have dealt with these issues while they were still live. The Court has addressed this case in the timing its docket permitted.

MEMORANDUM DECISION AND ORDER - 11

A couple of exceptions to the mootness doctrine are worth mentioning. The first is the voluntary cessation doctrine, and the other is "capable of repetition, yet evading review" doctrine. Neither applies in this case.

"[V]oluntary cessation of a challenged practice does not [generally] deprive a federal court of its power to determine the legality of the practice." *United States v. Brandau*, 578 F.3d 1064, 1068 (9th Cir. 2009) (cleaned up). However, a defendant's voluntary cessation of offending conduct will moot a case where "(1) subsequent events have made it absolutely clear that the allegedly wrongful behavior cannot reasonably be expected to recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Norman-Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1274 (9th Cir. 1997) (internal quotation marks, brackets, and citations omitted). A defendant's cessation of offensive conduct "must have arisen because of the litigation" in order to prevent the case from being moot. *Sze v. INS*, 153 F.3d 1005, 1008 (9th Cir. 1998) (citation omitted), *overruled in part on other grounds by United States v. Hovsepian*, 359 F.3d 1144, 1161 n.13 (9th Cir. 2004) (en banc). Where plaintiffs show no more than a correlation, and not causation, between the litigation and cessation, the case is moot. *See id.*, 153 F.3d at 1008. The defendant has the burden of showing that voluntary cessation moots a case. *See Lozano v. AT&T Wireless Servs.*, 504 F.3d 718, 732–33 (9th Cir. 2007); *see also Nat. Res. Def. Council v. Cty. of Los Angeles*, 840 F.3d 1098, 1104 (9th Cir. 2016) (reversing where district court applied the wrong standard and impermissible shifted the evidentiary burden to the plaintiffs).

MEMORANDUM DECISION AND ORDER - 12

In this case, the Governor and Director have carried their burden of showing that their voluntary cessation has mooted this case. Both elements are met. As explained above, the complained-of restrictions have been removed, and it is reasonably likely that the alleged wrongful restrictions are not going to recur. Additionally, based on the timing of the guidelines and orders being issued, the Court is persuaded that these changes were not merely in response to this case. Rather, the timing in which Plaintiffs decided to file their case at best provides a correlation in the actions taken, but that was Plaintiffs' decision, not the Governor or Director's. *See* Dkt. 22, at 5–6. The exception does not apply here.

Similarly, the "capable of repetition, yet evading review" doctrine does not keep this case afloat either. When situations that are capable of repetition, yet the party's actions appear to be intended to evade review, the mootness doctrine does not apply. *United States v. Brandau*, 578 F.3d 1064, 1067 (9th Cir. 2009) (cleaned up); *see also Hamamoto v. Ige*, 881 F.3d 719, 722 (9th Cir. 2018) (per curiam) ("An exception exists, however, for controversies that are capable of repetition, yet evading review." (cleaned up)). The "exception applies only in exceptional situations, where (1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again." *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016) (internal quotation marks and citation omitted); *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1124 (9th Cir. 1997) (reiterating the criteria and noting that the exception is "limited to extraordinary cases").

Here, the second element of the exception is not met for the reasons explained. It does not appear the restrictions will be reimposed. *See Spell*, 962 F.3d at 180; *see also Serena v. Mock*, 547 F.3d 1051, 1054 n.1 (9th Cir. 2008) (no reasonable expectation that appellants would be subjected to same action again). And, while the first element could be met if viewed in a narrow manner—each order isolated and standing alone—the first element is also not met when the time from March to date is viewed as the time to challenge the action. It is inexplicit how long each order will last, and how long the coronavirus restrictions will last. Thus, this exception does not apply.

## V. CONCLUSION

In a word, this case is moot and must be dismissed. There might come a day when this pandemic or another dire situation *could* cause severe restrictions of many constitutional and other legal rights, not just religious and travel ones. That *could* be a grave day for liberty. But those are situations for future days and future cases. While the Court holds dear the constitutional rights asserted in this case, and all constitutional rights for that matter, it cannot proceed to adjudicate this case under these circumstances. That said, because the Court cannot predict what the future will hold (as it relates to the COVID-19 pandemic), it dismisses this case without prejudice. In the unlikely event that the complained-of restrictions are imposed once more, Plaintiffs would be within their rights to file a new complaint, motions for emergency injunctions or temporary restraining orders,

and all other forms of relief they properly wish to seek.[6]

## VI. ORDER

The Court HEREBY ORDERS:

1. Defendants' Motion to Dismiss (Dkt. 18) is **GRANTED**.

2. This case is dismissed without prejudice and **CLOSED**.

3. The Court will enter a separate Judgment in accordance with Fed. R. Civ. P. 58.

DATED: January 7, 2021

_____
David C. Nye
Chief U.S. District Court Judge

---

[6] All forms of requested relief in the Amended Complaint are moot for the reasons stated. Specifically, as to their requested declaratory relief, however, Plaintiffs cannot show that the policy continues to affect their present interests for the same reasons outlined above. *Bayer v. Neiman Marcus Grp.*, 861 F.3d 853, 868 (9th Cir. 2017) ("To avoid mootness with respect to a claim for declaratory relief on the ground that the relief sought will address an ongoing policy, the plaintiff must show that the policy has adversely affected and continues to affect a present interest." (cleaned up)).

MEMORANDUM DECISION AND ORDER - 15